JUDITH LEE KRAUSE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Krause v. Commissioner
Docket No. 10230-90
United States Tax Court
T.C. Memo 1992-270; 1992 Tax Ct. Memo LEXIS 287; 63 T.C.M. (CCH) 2968; May 11, 1992, Filed *287 Decision will be entered under Rule 155. Judith Lee Krause, pro se. Barbara J. Fazekas, for respondent. GOLDBERG
GOLDBERG
MEMORANDUM OPINION GOLDBERG, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined a deficiency in petitioner's Federal income tax for the year 1986 in the amount of $ 1,623 and additions to tax under section 6653(a)(1)(A) and (B) in the amount of $ 81 and 50 percent of the interest with respect to the portion of the underpayment due to negligence. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioner resided in Cape May, New Jersey, when she filed her petition. After a concession by petitioner, the issues for our decision are: (1) Whether *288 respondent correctly determined that petitioner failed to report additional tip income in the amount of $ 5,852 and (2) whether petitioner is liable for additions to tax under section 6653(a)(1)(A) and (B) for negligence or intentional disregard of rules or regulations. Petitioner worked as a service bartender at the Sands Hotel and Casino (the Sands), beginning in July 1980, and is second in seniority among bartenders at the Sands. A service bartender works behind the bar in the game or slot machine area and fills orders taken by the cocktail servers, but has no direct contact with the public. During 1986, the Sands offered complimentary beverages to its gambling patrons at the game tables and slot machines. Cocktail servers would take orders from the patrons and relay the orders to the service bartenders who would fill them. The cocktail servers would then serve the drinks and were expected to share with the bartenders part of the tips they received. Bartenders, in turn, paid a portion of their tips to the bar porters. Petitioner ceased working as a service bartender in June 1988 and switched to working banquets because she was dissatisfied with the amount of her tip income. *289 Cocktail servers at the Sands worked three shifts: the day shift from 10 a.m. until 4 p.m. on weekdays or 5 p.m. on weekends; the swing shift from 4 p.m. until 10 p.m. on weekdays or 5 p.m. until 11 p.m. on weekends; and the graveyard shift from 10 p.m. until 4 a.m. on weekdays or 11 p.m. until 6 a.m. on weekends. Tip income of cocktail servers varies according to the hours of the day when they work. Petitioner worked a total of 1,929.75 hours in 1986 during the following shifts: 1,478.80 hours on the day shift and 450.95 hours on the swing shift. She normally began work at 10 a.m., opening each of the two bars in the gaming room, beginning with the front bar and then moving to the back bar, in the section of the room that was partially closed, and then she closed the back bar before leaving at 6 p.m. She had from three to six servers working in her area, depending on the time of day. On her 1986 Federal income tax return, petitioner reported tip income in the total amount of $ 6,473 from her employment as a bartender at the Sands. This was the amount which appeared on the Form W-2 which she received from the Sands. On the basis of a statistical analysis produced as part of *290 the Atlantic City Tip Project, an Internal Revenue Service coordinated audit project, respondent determined that petitioner received tip income during 1986 at the following rate: Day shift:
$ 5.84 per hour x 1,478.80 hrs. =
$  8,636.19
Swing shift:
$ 8.18 per hour x 450.95 hrs. = 3,688.77
Total
$ 12,324.96
On this basis, respondent determined that petitioner failed to report $ 5,852 of additional tip income ($ 12,325 less $ 6,473 reported by petitioner). Petitioner received a weekly paycheck from the Sands. Her weekly salary was $ 355.90 from January through August and $ 363.90 from September through December. Petitioner kept a contemporaneous diary of her tip income in a small notebook she carried in her work pocketbook and which she filled in either after work or at home the same night. She reported her tip income to her employer on Form 4070, Employee's Report of Tips to Employer, at the end of the pay period. She would normally total her tips for the week and report them to the Sands on the following Monday morning. The tip income would then be reported to her, with appropriate withholding, on her pay stub for the following week. Petitioner's average reported *291 tip income was $ 124.48 per week. There are some discrepancies between petitioner's figures in her diary and the figures on her Forms W-2. Petitioner's daily figures total $ 6,015, while the total of her Forms W-2 tip income is $ 6,473. On a number of occasions, petitioner added small sums which she felt she had received to the totals in her diary when reporting her tip income to her employer. At various points she noted additional unexplained sums from past weeks which she felt were unreported and added them to her reported total. There were 6 weeks in which petitioner's pay stubs reflected zero reported tip income. These omissions were explained by the fact that petitioner's reported tip income was not picked up by the employer in time to be reflected on the proper paycheck. This tip income appeared on the subsequent paycheck. There were also 7 days on which petitioner reported no tip income in her diary. On one of those days, the bar was closed down by the board of health. Respondent's Atlantic City Tip Project is the source of her statistics used to reconstruct petitioner's income. Surveillance of cocktail servers was conducted in the years 1980, 1981, 1984, 1985, 1987, *292 1988, and 1990. It consisted of observations of various cocktail servers each by a team of two agents for a 30-minute period. The agents went to locations chosen at random by computer and observed the tips given to a server. They were instructed to make certain conservative assumptions; for example, if they could not clearly see a bill, to assume it was a dollar, and if they could not see a coin, to assume it was a quarter. In the 1984-85 period, there were 63 half-hour periods of surveillance conducted at each of 10 casinos; in the 1987-88 period, there were 42 half-hour observations at each of 12 casinos. No surveillance was undertaken in 1986. On the basis of this project, respondent's statisticians developed a series of figures representing average tip income of servers in the slot machine and games areas. These figures varied according to shift. The figures for the year 1986 were estimates, as no surveillance was done in that year. A summary of these data is as follows: Cocktail Waitress Tip Income -- Slot Machines Shift Averages by Year Year
Day
Swing
Grave
1984
$ 5.07   $ 8.01   $ 5.09   1985
5.90   9.31   6.77   1986 * 9.06 *
12.15 *
8.11 *
1986 **
9.07 **
12.03 **
7.54 **
1987
12.24   14.74   8.30   1988
13.03   16.52   12.27   *293 Cocktail Waitress Tips -- Games Shift Averages by Year Year
Day
Swing
Grave
1981
$ 11.71   $ 17.14   $ 17.03   1985
9.85   11.93   20.07   1986 *
14.84 * 19.91 * 21.11   1986 **
13.01 **
18.27 **
20.64 **
1987
16.16   24.60   21.21   1988
18.78   23.11   23.27   Respondent used slightly lower figures based on a more conservative 95-percent confidence level prediction as the basis of her reconstruction of tip income for employees of Atlantic City casinos. As part of the surveillance project, cocktail servers *294 were interviewed and asked how much of their tip income they tipped out to the bartenders. On the basis of 11 such interviews, of which 2 were rejected, respondent determined that 12 percent of the servers' tip income was paid over to the bartenders. The two servers whose responses were rejected said that they kept the first $ 25 and tipped out 15 percent thereafter. Respondent's expert eliminated these two responses because he felt they were incorrect. Respondent conducted no actual observation of bartenders' receipt of tips. Respondent determined that petitioner understated her tip income by $ 5,852. Petitioner argues that (1) she has complied with the record-keeping requirements of section 31.6053-4(a)(1), Employment Tax Regs., having kept a detailed, contemporaneous diary which is substantially accurate, and (2) that respondent's method of income reconstruction has less reliability than her own reporting method, due to the fact that the surveillance project focused entirely upon cocktail waitresses and included no observation of bartenders. It is well settled that tips are includable in gross income as compensation for services. Anson v. Commissioner, 328 F.2d 703 (10th Cir. 1964), *295 affg. T.C. Memo. 1963-10; sec. 61(a); sec. 1.61-2(a)(1), Income Tax Regs. Section 6053 and the regulations thereunder provide the general framework for the reporting of tips. Every employee who receives tips in the course of employment must furnish a written report of those tips to the employer on at least a monthly basis. Sec. 6053(a). In turn, certain employers must report these tips to the Secretary. Sec. 6053(c)(1)(D). All taxpayers are required to keep sufficient records to enable respondent to determine their correct tax liability. Sec. 6001. Where, as here, a taxpayer received income from tips on a daily basis, this necessarily requires the maintenance of accurate and contemporaneously prepared diaries or records of tip income received, sec. 1.6001-1(a), Income Tax Regs., and such records must be retained by the taxpayer "so long as the contents thereof may become material in the administration of any internal revenue law". Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965); Bruno v. Commissioner, T.C. Memo. 1985-168; sec. 1.6001-1(e), Income Tax Regs.
If taxpayers do not keep records of tip income, or if *296 their records do not clearly reflect income, respondent may compute income in a manner that does clearly reflect income. Sec. 446(b); Meneguzzo v. Commissioner, supra at 831. Respondent has latitude in adopting a suitable method for reconstructing a taxpayer's income. Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970); Way v. Commissioner, T.C. Memo. 1990-590. It is sufficient if respondent's reconstruction is reasonable in light of the surrounding facts and circumstances. Schroeder v. Commissioner, 40 T.C. 30, 33 (1963). Section 451(c) provides a special rule for the taxable year of inclusion for employee tips: For purposes of subsection (a), tips included in a written statement furnished an employer by an employee pursuant to section 6053(a) shall be deemed to be received at the time the written statement including such tips is furnished to the employer. Accordingly, tips received in December of each year and reported to the employer in the following January are reflected in the Forms W-2 for the tax year beginning in January, despite the fact that a cash method taxpayer received the tips *297 in a prior tax year. Saukerson v. Commissioner, T.C. Memo. 1975-188; sec. 1.451-1(c), Income Tax Regs.
Respondent's method of recomputing income carries with it the presumption of correctness, and petitioner has the burden of proving it wrong. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). We have accepted the use of formulas in the reconstruction of tip income. Cracchiola v. Commissioner, 643 F.2d 1383 (9th Cir. 1981), affg. T.C. Memo. 1979-3. On the basis of all the evidence presented, and on this record, we find that petitioner has met her burden of proof. She has satisfied the requirement of section 31.6053-4(a)(1), Employment Tax Regs., by keeping a daily record and has reported amounts substantially the same as recorded therein. Petitioner reported $ 458 more in tip income than she recorded in her diary. Respondent succeeded in casting an element of doubt upon petitioner's figures, particularly upon the 6 unexplained days in which she reported no tip income, but on balance we found petitioner's figures accurately reflected the tip income earned. This Court has held that the statistics *298 developed in respondent's Atlantic City Tip Project are the basis of a reasonable method of reconstructing the income of cocktail servers. Cohen v. Commissioner, T.C. Memo. 1990-650; Ross v. Commissioner, T.C. Memo. 1989-682. However, we find that these statistics do not reflect petitioner's income in tax year 1986 as accurately as her own daily records. Petitioner presented evidence of her income in the form of applications she filed for disability insurance, home refinancing, and a home-improvement loan. In these applications, she listed her income as salary of $ 2,000 per month, approximately equal to her reported salary on her 1986 Federal income tax return, $ 25,915. Petitioner has been a bartender for an extended period of time and has previously appeared before this Court on the same issue in tax year 1985, when her diary of tips was found to be incomplete. Krause v. Commissioner, T.C. Memo. 1990-631, affd. without published opinion 944 F.2d 897 (3d Cir. 1991). In tax year 1986, petitioner complied with the record-keeping requirements of section 31.6053-4(a)(1), Employment Tax Regs., by keeping *299 a daily diary, and submitted timely tip reports to the Sands in such a way that her reported tip income was included on her pay stubs according to the provisions of section 451(c). We find on this particular record that the amounts shown in her diary and reported to the Sands are accurate. Accordingly, we hold that petitioner fully reported her tip income on the Federal income tax return she filed for the year 1986. This holding eliminates the additions to tax under section 6653(a)(1)(A) and (B). Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. These values estimated from a least squares regression line with a common slope but different intercepts. ↩
**. Average of the two adjoining years.↩
*. These values estimated from a least squares regression line with a common slope but different intercepts. ↩
**. Average of the two adjoining years.↩