STEPHEN A. HIGGINSON, Circuit Judge:
This case concerns coffee and tipping. Two waiters sued the Houston restaurant where they worked, claiming the restaurant violated federal law by requiring them to share tips with the restaurant’s “coffee-man.” The district court granted the restaurant’s motion for summary judgment, holding that, as a matter of law, the coffee-man was an employee who customarily and regularly received tips. Because there is a genuine issue of material fact as to whether the coffeeman customarily and regularly received tips, we REVERSE.
BACKGROUND
Plaintiffs-Appellants David Montano and Gaston Nieves worked as waiters for Tony’s, a fine-dining restaurant in Houston. Tony’s divided its dining room into various “stations,” each consisting of several tables. Each station’s tables were serviced by a “captain,” or lead waiter, and additional “waiters, busboys, and other service personnel.” At the end of each shift, the tips left on a station’s tables were divided, as directed by Tony’s, among the captain, front waiter, back waiter, busboy, bartender, and coffeeman. All participants in the tip pool received a percentage of the station’s tips except for the coffeeman, who received a fixed ten dollars from each station each shift. In addition to their tips, the plaintiffs were paid $2.13 per hour by Tony’s.
On January 17, 2012, Montano sued Tony’s, claiming that by requiring him to share his tips with the coffeeman, who they' claim worked in the kitchen and did not serve customers, the restaurant violated the Fair Labor Standards Act *188 (“FLSA”).[1] Tony’s moved for summary judgment, arguing that it complied with the FLSA provision that permitted “the pooling of tips among employees who customarily and regularly receive tips” and that the coffeeman could be included in such a tip pool because his “primary duties entail important customer service functions.” The plaintiffs opposed, arguing that the coffeeman did not receive tips directly from customers and did not service, or even interact with, the customers. The district court granted summary judgment for the restaurant. Montano v. Montrose Rest. Assocs., Inc., No. H-12-153, 2014 WL 7529628 (S.D.Tex. Feb. 4, 2014). The court reasoned:
For a worker to be eligible for tip sharing, his work must be important for direct diner service.... The barista directly supports the waiters [by making coffee and related concoctions]. He is an aide, not a remote coworker like a janitor or cook. Prompt, skillful preparation of these drinks produces diner satisfaction.... Tony’s may require its waiters to share their tips with [the barista].
Id. at *1-2. Plaintiffs timely appealed.
DISCUSSION
I.
We review a district court’s grant of summary judgment de novo, applying the same standard as the district court. Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A., 754 F.3d 272, 275 (5th Cir.2014). Summary judgment is appropriate where “there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(a). “A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party.” Bluebonnet, 754 F.3d at 276 (citations and internal quotation marks omitted). We “consider evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.” Id.
The FLSA sets the general national minimum wage at $7.25 per hour. 29 U.S.C. § 206(a)(1).[2] The FLSA contains an exception that permits employers to pay less than the general minimum wage— $2.13 per hour — to a “tipped employee” as long as the employee’s tips make up the difference between the $2.13 minimum wage and the general minimum wage. 29 U.S.C. § 203(m); see also Fast v. Applebee’s Int’l, Inc., 638 F.3d 872, 874 (8th Cir.2011). This employer discount is commonly referred to as a “tip credit.” See Fast, 638 F.3d at 874.
A restaurant may not claim a tip credit unless “all tips received by [a tipped] employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.” 29 U.S.C. § 203(m). Thus, the general rule is that an employer may not claim the tip credit unless a tipped employee is permitted to retain all of his tips. See id.[3] The statute *189 provides a limited exception to this rule by permitting “the pooling of tips among employees who customarily and regularly receive tips.” Id. If an employee is required to share tips with an employee who does not customarily and regularly receive tips, the employer may not legally take a tip credit.[4]
The primary issue in this case is whether Tony’s properly claimed the “tip credit” and paid Appellants less than the general minimum wage. There is no dispute that Appellants, as waiters, are “tipped employees.”[5] There is also no dispute that Appellants did not retain all of their tips; Tony’s required them to pool and share with other waiters, busboys, a bartender, and the coffeeman. Appellants do not challenge the requirement that they share tips with other waiters, busboys, or the bartender. Therefore, the narrow issue is whether the coffeeman was an employee who “customarily and regularly received tips.” 29 U.S.C. § 203(m). If the answer is yes, Tony’s prevails. If the answer is no, Tony’s violated the FLSA by failing to pay Appellants $7.25 per hour.[6] Tony’s has the burden of establishing its entitlement to the tip credit. See Roussell v. Brinker Int’l, Inc., 441 Fed.Appx. 222, 230 (5th Cir.2011) (holding that a restaurant “had the burden to prove it operated a legal tip pool”); see also Myers v. Copper Cellar Corp., 192 F.3d 546, 549 n. 4 (6th Cir.1999) (“[A]n employer who invokes a statutory exemption from minimum wage liability bears the burden of proving its qualification for that exemption.”); S.Rep. No. 93-690, at 43 (1974) (“[T]he original intent of Congress [is] to place on the employer the burden of proving .... the amount of tip credit, if any, which such employer is entitled to claim.... ”).
II.
It is not easy to determine whether the Tony’s coffeeman customarily and regularly received tips. The obvious starting point, of course, would be to inquire whether he actually received tips. Here, however, it is of no moment that the coffeeman actually received tips because he received tips exclusively through an employer-mandated tip pool. It would be circular to find that, because Tony’s required waiters to give the coffeeman tips, the coffeeman customarily and regularly received tips. This would allow a restaurant to designate any employee it wished as a tipped employee and claim a tip credit, as long as it made that employee part of a mandatory tip pool and the waiter’s retained tips plus the waiter’s $2.13 salary exceeded the general minimum wage. To give meaning to the statute, the question must be whether the coffeeman would cus *190 tomarily and regularly receive tips if waiters were not required to include him in the tip pool.[7] See 29 U.S.C. § 203(m). Unfortunately, the record contains no information about the büt-for world; Tony’s longstanding practice was to require waiters to include the coffeeman in their tip pools.
Determining whether the coffeeman would receive tips in the absence of Tony’s policy requiring them to share in the tip pool is particularly difficult because restaurant patrons typically do not specify a recipient for their tips. A “tip” within the meaning of the FLSA is defined as “a sum presented by a customer as a gift or gratuity in recognition of some service performed for him.... Whether a tip is to be given, and its amount, are matters determined solely by the customer, who has the right to determine who shall be the recipient of the gratuity.” 29 C.F.R. § 531.52; see also United States v. Conforte, 624 F.2d 869, 874 (9th Cir.1980) (defining a “tip” as “a voluntary payment in an amount, and to a person, designated by the customer”). Unlike tips that are given directly to a recipient — e.g., a parking attendant or bellhop — restaurant tips are left on the table, and are usually “undesignated.” See Austin v. Colonia Williamsburg Hotel Props., Inc., No. 4:95CV130, 1996 WL 406671, at *1 (E.D.Va. June 14, 1996) (“The tips which are left after a meal are ordinarily undesignated. That is, the customer will ordinarily leave one tip and not designate to whom any portion of the tip should be given.”). Even without direct evidence of the intended recipients of the tips, we can employ several tools to infer who the recipients are.
We first consider U.S. Department of Labor (“DOL”) rules and guidance. The DOL is authorized to promulgate rules interpreting and clarifying the FLSA. See Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158, 165, 127 S.Ct. 2339, 168 L.Ed.2d 54 (2007) (explaining that the Secretary of Labor is authorized “to prescribe necessary rules, regulations, and orders with regard to the amendments made by this Act”) (quoting Pub.L. No. 93-259, § 29(B), 88 Stat. 55 (1974)). The DOL’s Wage and Hour Division has interpreted the FLSA and its tip credit provisions in administrative materials. See 29 U.S.C. § 259; see also Updating Regulations Issued Under the Fair Labor Standards Act, 76 Fed.Reg. 18832-01, 18839 (Apr. 5, 2011) (“Wage and Hour has interpreted the tip pooling clause more fully in opinion letters and in its Field Operations Handbook. ... ”). These materials can help give meaning to ambiguous statutory and regulatory phrases like “customarily and regularly receive tips.”[8]
The DOL has provided examples of occupations that “customarily and regularly receive tips” and those that do not. Its Field Operations Handbook (“Handbook”) lists “waiters/waitresses”; “bellhops”; *191 “counter personnel who serve customers”; “busboys/girls (server helpers)”; and “service bartenders” as tipped occupations and “[j]anitors”; “[d]ishwashers”; “[c]hefs or cooks”; and “[l]aundry room attendants” as non-tipped occupations. U.S. Dep’t of Labor, Field Operations Handbook § 80d04(a), (c) (1988).[9] A coffeeman is not on either list and, more critically, the Handbook provides no explanation why the selected employees fall into one or the other category. See Neil Patrick McConnell, Comment, Mr. Pink Never Leaves a Tip: How Current Tip Credit and Tip Pool Guidelines Leave Employees at the Mercy of Employers, 114 Penn St. L.Rev. 621, 632 (2009) (noting that the Handbook’s listings do not “explain!] the employee characteristics which qualify or disqualify particular types of employees from being able to participate in the tip pool”).
The DOL also has issued opinion letters responding to inquiries about whether certain employees qualify as tipped employees under the FLSA. The opinion letters make clear that one’s status as an employee who “customarily and regularly receives tips” is “determined on the basis of his or her activities,” not on the employee’s job title. U.S. Dep’t of Labor, Wage & Hour Div., Opinion Letter, 1997 WL 998047, at *2 (Nov. 4, 1997); see also 29 C.F.R. § 531.56 (recognizing that some employees have dual jobs and an employee is only a “tipped employee” when engaged in that job in which he is tipped).[10] For example, chefs are one of the classic examples of those with whom tipped employees cannot be required to share tips. See Handbook § 30d04(c) (listing chefs or cooks, along with janitors, dishwashers, and laundry room attendants as occupations not eligible to participate in a tip pool). But sushi chefs who work at a counter in the dining room and directly serve customers may participate in tip pools. See U.S. Dep’t of Labor, Wage & Hour Div., Opinion Letter, 2008 WL 5483058, at *1 (Dec. 19, 2008). This case highlights the shortcoming of attempting to classify based on job title rather than the employee’s duties. The coffeeman is varyingly referred to in the record as “coffeeman”; “kitchen barista”; “food runner/barista”; “barista”; and “Kitchen Coffee Man”. Appellants themselves used “kitchen barista” in the original Montano complaint, but “Kitchen Coffee Man” in the later Nieves complaint. Labels are easily molded to fit a party’s goals and cannot be determinative of whether an employee customarily and regularly receives tips.
While the opinion letters, like the Handbook, do not address the coffeeman occupation, they provide some insight into the DOL’s view of when an employee customarily and regularly receives tips. The DOL has advised that itamae-sushi and teppanyaki chefs who prepare and serve meals directly to customers are tipped employees because they provide customer service similar to counter persons. See *192 U.S. Dep’t of Labor, Wage & Hour Div., Opinion Letter, 2008 WL 5483058, at *1 (Dee. 19, 2008). Barbacks who assist bartenders, primarily work in front of and around customers, and have the opportunity to occasionally interact with customers are tipped employees because they are similar to busboys. See U.S. Dep’t of Labor, Wage & Hour Div., Opinion Letter, 2009 WL 649014, at *1-2 (Jan. 15, 2009). On the other hand, a dishwasher who occasionally responds to customer requests and has minimal presence in the dining room setting up glasses likely is not a tipped employee. See U.S. Dep’t of Labor, Wage & Hour Div., Opinion Letter, 1997 WL 998047, at *1-2 (Nov. 4, 1997). With this guidance in mind, we turn to how courts have determined which employees customarily and regularly receive tips.
III.
Courts faced with this question have analyzed the employee’s job duties to determine whether he was tipped or not. In one frequently cited case, the Sixth Circuit determined that restaurant hosts and hostesses were engaged in an occupation in which they customarily and regularly received tips because they had “more than de minimis interaction with the customers” in an industry in which “undesignated tips are common.” Kilgore v. Outback Steakhouse of Fl., Inc., 160 F.3d 294, 301 (6th Cir.1998). The Sixth Circuit considered hosts’ interaction with restaurant patrons to be a good proxy for whether diners intended them to receive tips. Because tipping is a “gratuity in recognition of some service performed,” 29 C.F.R. § 531.52, the fact that hosts “perform[ed] important customer service functions” in front of the customers meant that hosts qualified as “tipped employees.” See Kilgore, 160 F.3d at 301-02. The court in Kilgore used these principles to distinguish hosts — who greeted customers, supplied them with menus, sat them at tables, and occasionally “enhanced the wait” by treating waiting customers to complimentary drinks or appetizers — from dishwashers, cooks, or off-hour employees like a janitor — who did not directly interact with the customers at all. Id. at 301.
Subsequently, the Sixth Circuit held that salad preparers, who “abstained from any direct intercourse with diners, worked entirely outside the view of restaurant patrons, and solely performed duties traditionally classified as food preparation or kitchen support work,” could not be categorized as “tipped employees.” Myers, 192 F.3d at 550.[11] The court required the restaurant to pay waiters the general minimum wage for shifts in which salad preparers were improperly included in the tip pool. See id. at 550-51.
In an unpublished decision, this court reviewed a jury’s finding that “Quality Assurance” workers did not work in a position “that customarily and regularly receive^] tips.” Roussell, 441 Fed.Appx. at 225, 231. The workers inspected completed food orders from the kitchen, garnished plates, and delegated to servers and bussers the delivery of food to customers. Id. at 225. Employing a standard deferential to the jury’s verdict on review of the denial of a judgment as a matter of law, we found that the jury could have found that Quality Assurance workers did not customarily and regularly receive tips. See id. at 229-30. We drew a distinction between front-of-the-house staff (who customarily receive tips) and back-of-the-house staff (who do not) and held that direct customer interac *193 tion was “highly relevant” to tip eligibility. Id. at 231. We declined to adopt the restaurant’s proposed rule that “employees who perform important customer service functions are eligible to share tips regardless of whether they have direct customer interaction or not.” Id.
The common thread of the cases and the DOL opinion letters is to require a tipped employee to have more than a de minimis interaction with the customers who leave the undesignated tips.[12] We agree with these persuasive authorities and hold that, in determining whether an employee customarily and regularly receives tips, a court — or a factfinder — must consider the extent of an employee’s customer interaction. This rule is faithful to the goal of the inquiry: determining the customer’s intent. A customer is more likely to tip someone with whom he has contact, or at least sees assisting in the service.[13] A court or factfinder should.also consider whether the employee is engaging in customer service functions. Even an employee who works in the dining room will not be considered a tipped employee if his work is not customer service-oriented, for example, an electrician who is repairing a chandelier for the restaurant.
The district court erred in failing to consider the extent of the coffeeman’s customer interaction in determining whether he customarily and regularly received tips. The district court found that the coffeeman “directly aid[s] in serving diners” and that his work is “important for direct diner service.” Montano, 2014 WL 7529628, at *1. While this may be true, the district court’s test does not adequately distinguish those employees traditionally considered to be tipped from those considered to be non-tipped. See Handbook § 30d04. Many traditionally non-tipped employees aid waiters and are important for direct diner service. Indeed, it is difficult to imagine more important contributions to diner satisfaction than providing a meal (a chef) and clean silverware with which to eat it (a dishwasher). To customarily and regularly receive tips requires more. The central difference between employees who are traditionally tipped and those who are not is that the former work primarily in the front of the house where they are seen by and interact with customers, while the latter work primarily or exclusively in the back of the house. See Roussell, 441 Fed. Appx. at 231 (“Customarily, front-of-the-house staff like servers and bartenders receive tips. Back-of-the.-house staff like cooks and dishwashers do not, and thus cannot participate in a mandatory tip pool.”).[14]
*194 IV.
Applying this standard, there is a genuine issue of material fact as to whether the coffeeman was eligible to participate in a mandatory tip pool. Critically, there is a genuine issue of fact about whether the coffeeman had any interaction with the diners who left the tips. The evidence on summary judgment divides the relevant time period in half. Before June 2011, taking the facts in the light most favorable to Appellants, as we must, the coffeeman never went into the dining room, never brought trays to and from the dining room, did not wear a uniform, and only made coffee and tea. Starting sometime in the summer of 2011, the coffeeman’s job responsibilities expanded, though the extent of the expansion is disputed. Taking the facts in the light most favorable to Appellants, the coffeeman began wearing a uniform and carried large trays to the dining room about once per week. Even after this small change in job responsibilities, the coffeeman spent “most” of his time in the kitchen making coffee. At all relevant times, the coffeeman did not take customer orders, did not pour water or arrange water glasses, and did not help prepare the bread.[15] . Viewing the evidence in the light most favorable to Appellants, the coffeeman had no customer interaction until the summer of 2011, and only de minimis interaction (one occasion per week) thereafter. From a station in the kitchen, the coffeeman received orders from waiters and provided waiters drinks to give to customers. From this evidence, a factfinder could find that the coffeeman did not customarily and regularly receive tips.
CONCLUSION
Determining whether an employee is one who “customarily and regularly receives tips” is a fact-intensive inquiry that requires a case-by-case analysis of the employee’s duties and activities. There is evidence from which a factfinder could conclude that the coffeeman’s level of customer interaction in a customer service role was non-existent or minor enough such that he is more similar to a cook or a *195 dishwasher than he is to a waiter or a busboy. For these reasons, we REVERSE the district court’s grant of summary judgment and REMAND to the district court for proceedings consistent with this opinion.[16]

. On October 19, 2012, Nieves sued the restaurant, alleging the same FLSA violations. Both complaints are styled as "collective action” complaints on behalf of similarly situated Tony’s waiters. The district court consolidated the cases.

. Between July 24, 2008 and July 23, 2009, the minimum wage was $6.55 per hour. 29 U.S.C. § 206(a)(1). Although the change in the minimum wage could be relevant for damages, it does not affect our analysis.

.The FLSA also requires an employer taking a tip credit to inform its employees about any tip pooling arrangement. See 29 U.S.C. *189 § 203(m). The issue of notice is not on appeal.

. This complicated statutory structure is the result of this country’s unique and durable tradition of tipping. See Yoram Margalioth, The Case Against Tipping, 9 U. Pa. J. Lab. & Emp. L. 117, 121 (2006) (“[Tapping has become quintessentially American.”).

. The FLSA defines “[t]ipped employee” as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips.” 29 U.S.C. § 203(t).

.See U.S. Dep't of Labor, Wage and Hour Div., Fact Sheet # 15: Tipped Employees Under the Fair Labor Standards Act (FLSA) (rev. July 2013), available at http://www.dol.gov/ whd/regs/compliance/whdfs 15.pdf (last visited July 23, 2015) (“Where a tipped employee is required to contribute to a tip pool that includes employees who do not customarily and regularly receive tips, the employee is owed all tips he or she contributed to the pool and the full $7.25 minimum wage.”).

. The FLSA does not require that an employee who customarily and regularly receives tips receive them directly from customers. See Kilgore v. Outback Steakhouse of Fl., Inc., 160 F.3d 294, 301 (6th Cir.1998) (citing U.S. Dep't of Labor Field Operations Handbook § 30d04(a) ("It is not required that all employees who share in tips must themselves receive tips from customers.”)). For example, if waiters voluntarily and customarily shared tips with the coffeeman, the coffeeman could be an employee who customarily and regularly received tips.

. For example, in interpreting an ambiguous regulatory phrase, the Eighth Circuit afforded Auer deference to the DOL's interpretation that an employee must spend 20 percent of his time engaged in tip-producing activities to be considered a "tipped employee.” Fast, 638 F.3d at 876-81 (citing Auer v. Robbins, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997)).

. These categories correlate directly with those contemplated by Congress when it first promulgated Section 203(m) in 1974. See S. Rep. 93-690, at 43 (categorizing "waiters, bellhops, waitresses, countermen, busboys, service bartenders, etc” as employees who customarily and regularly receive tips and "janitors, dishwashers, chefs, laundry room attendants, etc” as employees who do not).

. Indeed, in one opinion letter, the DOL opined on whether a restaurant’s dishwashers qualified as tipped employees. U.S. Dep’t of Labor, Wage & Hour Div., Opinion Letter, 1997 WL 998047 (Nov. 4, 1997). If the DOL deferred to job title, it need not have issued a detailed opinion, because "dishwasher” is listed in the Handbook as an example of an employee that does not customarily and regularly receive tips. Handbook § 30d04(c). Instead, the DOL carefully assessed the subject dishwashers' stated job duties.

. The court found it irrelevant that the "salad preparers” were waiters who were assigned to prepare salads for certain shifts. See Myers, 192 F.3d at 548, 550-51. What mattered was their job duties during the shifts in question, not their titles. See id.

.Lower courts too have consistently focused on the extent of customer interaction when determining whether an employee is customarily and regularly tipped. See Rubio v. Fuji Sushi & Teppani, Inc., No. 6:141cv-1753, 2013 WL 230216, at *3 (M.D.Fla. Jan. 22, 2013) (kitchen chefs were not tipped employees because they did not have “more than minimal customer interaction’’); Gunawan v. Sake Sushi Rest., 897 F.Supp.2d 76, 89 (E.D.N.Y.2012) (a waitress could not be required to share tips with a chef “who had no direct interaction with customers.”); Pedigo v. Austin Rumba, Inc., 722 F.Supp.2d 714, 732 (W.D.Tex.2010) (granting summary judgment to plaintiff because dishwashers who occasionally shucked oysters and peeled shrimp did not "have more than minimal customer interaction”).

. It is not clear that Tony's diners are even aware there is a designated employee to make coffee drinks, while they are likely aware that waiters, busboys, and bartenders are contributing directly to their enjoyment.

. The district court’s decision — and Tony’s argument — analogizes the coffeeman and a service bartender. See Montano, 2014 WL 7529628, at *1; Handbook § 30d04(a). This analogy crucially relies on a premise that is not supported by the record or by supporting legal materials: that a service bartender, as *194 the Department of Labor uses the term, "works out of sight." Montano, 2014 WL 7529628, at *1. In fact, a service bartender, within the meaning of the FLSA, is likely a front-of-the-house employee who works in plain view of customers. See Elkins v. Showcase, Inc., 237 Kan. 720, 704 P.2d 977, 989 (1985) (characterizing a bartender located behind a wall, with no customer contact, as a "nonservice” bartender for purposes of the FLSA). Authority cited by Tony’s defines "service bartender” as it is used in the tax, not labor, context, and, in any event, does not support the conclusion that a service bartender works out of sight. See Krause v. Comm'r, 63 T.C.M. (CCH) 2968 (1992) ("A service bartender works behind the bar in the game or slot machine area and fills orders taken by the cocktail servers, but has no direct contact with the public.” (emphasis added)). Classifying a service bartender as a front-of-the-house employee, albeit one that may not always directly interact with customers, is consistent with how courts and the DOL have distinguished employees who do and do not customarily and regularly receive tips.

. Tony's submitted evidence that the coffee-man helps bring food to the dining room 20-25 times per shift (more on weekends), assists with bringing bread to tables, and must wear a busboy uniform so he looks presentable to customers. The affidavit is dated May 7, 2012, and it is unclear if the description refers to the current job duties only or as they existed before the summer of 2011. In any event, because these facts are directly disputed, we ignore them for purposes of summary judgment. See Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc., 669 F.2d 1026, 1031 (5th Cir.1982) (in assessing whether summary judgment is appropriate, ”[a]U reasonable doubts about the facts should be resolved in favor of the non-moving litigant”).

. Because we reverse the grant of summary judgment, we need not reach Appellants’ alternative argument that the district court should have permitted additional pre-summary judgment discovery.