# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 27, 2018

Lyle W. Cayce
Clerk

No. 17-20710

KRYSTAL GURULE; MELISSA HALL; RYAN MATTE; KIMBERLY TAYLOR,

> Plaintiffs - Appellants Cross-Appellees

v.

LAND GUARDIAN, INCORPORATED; MOHAMMAD AYMAN JARRAH,

> Defendants - Appellees Cross-Appellants

Appeals from the United States District Court
for the Southern District of Texas

Before HAYNES, HO, and DUNCAN, Circuit Judges.

STUART KYLE DUNCAN, Circuit Judge:

This case asks us to explore the relationship between the cost-shifting mechanism in Federal Rule of Civil Procedure 68 and the fee-shifting provision in the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* One of the plaintiffs rejected a Rule 68 offer of judgment and proceeded to trial, where she prevailed on her FLSA claim and was awarded damages and attorney's fees. There was a catch, however: the damages she won at trial were lower than the offer she had earlier spurned, and so Rule 68 required her to pay the defendants' post-offer costs. The issue is what effect, if any, this should have on the plaintiff's fee award. Several circuits have held that, in assessing a

No. 17-20710

plaintiff's degree of success under a fee-shifting provision like the FLSA's, a court should consider a plaintiff's rejection of a Rule 68 offer that would have given her more than what she ultimately obtained at trial. We think that approach makes sense and so join those circuits. We AFFIRM the fee award, however, because the district court properly considered the rejected Rule 68 offer in its considerable downward adjustment of the lodestar. We AFFIRM the district court's judgment in all other respects.

## I.

Appellants Krystal Gurule ("Gurule"), Melissa Hall ("Hall"), Ryan Matte ("Matte"), and Kimberly Taylor ("Taylor") were employees at the midtown Houston nightclub, Gaslamp. Gaslamp is owned and operated by Appellees Land Guardian and Mohammad Ayman Jarrah (collectively "Gaslamp"). Gurule and Hall were employed as bottle-service waitresses, Matte and Taylor as bartenders. In December 2015, those employees sued Gaslamp under the FLSA for failure to pay minimum wage and overtime. *See* 29 U.S.C. §§ 206(a), 207(a). Their complaint alleged that Gaslamp violated the minimum wage requirement by systematically diverting tips from tipped employees, *id.* §§ 206(a), 203(m), and the overtime requirement by failing to pay time-and-a-half to employees working more than 40 hours per workweek, *id.* § 207(a). As relief they sought minimum wage for hours worked, "wrongfully diverted" tips, overtime wages, as well as liquidated damages, attorney's fees, and costs. In February 2016 Hall settled her claims against Gaslamp for $300. In April 2017 Gaslamp moved for partial summary judgment on Matte and Taylor's claims. That same month Gurule, Matte, and Taylor were granted stipulated dismissal of their overtime claims.

In July 2017 the court granted Gaslamp summary judgment on Matte and Taylor's remaining claim. The court found that Matte and Taylor failed to produce any evidence showing "as a matter of just and reasonable inference"

2

that they had "performed uncompensated work." *See Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 441 (5th Cir. 2005) (an FLSA plaintiff meets her initial burden "'if [she] proves that [she] has in fact performed work for which [she] was improperly compensated and if [she] produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference'") (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)). Matte and Taylor admitted they lacked "any evidence of their own supporting their claims," but instead "exclusively rel[ied] on the representative testimony of Plaintiff Gurule to prove their hours worked and tips received." As the court explained, such "representational testimony" may establish a prima facie FLSA case under certain circumstances. *See, e.g., Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016); *see also Albanil v. Coast 2 Coast, Inc.*, 444 F. App'x 788, 806 (5th Cir. Oct. 13, 2011) (unpublished) (discussing representational testimony in FLSA cases and collecting authorities). But not here, the court concluded, given that Gurule had different duties from Matte and Taylor, lacked "personal knowledge" of their work, and "could only speculate" about their hours. The court therefore granted summary judgment on Matte and Taylor's claims.[1]

All that remained was Gurule's minimum wage claim, which would be tried to a jury in September 2017. About a year-and-a-half before that, in

---

[1] In the same order, the court also granted Gaslamp's motion to dismiss Matte and Taylor's claim for "recovery of allegedly stolen tips" under Federal Rule of Civil Procedure 12(c). The court concluded that 29 U.S.C. § 216(b) limited FLSA remedies to unpaid minimum wages, liquidated damages, and attorney's fees, but "d[id] not authorize the recovery of stolen tips in violation of section 206 of the FLSA." Matte and Taylor's opening brief expressly declines to "raise on appeal any error with respect to the granting of th[is] motion to dismiss[.]" We note that, subsequent to the district court's July 2017 order, Congress amended § 216(b) to provide that an employer who violates the FLSA tip credit provision in § 203(m)(2)(B) shall be liable "in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer," as well as for liquidated damages. *See* Pub.L. 115-141, Div. S, Title XII, § 1201(b), Mar. 23, 2018, 132 Stat. 1148.

No. 17-20710

February 2016, Gaslamp made Gurule an offer of judgment under Federal Rule of Civil Procedure 68 in the amount of $3,133.44, which she rejected. She also declined to accept subsequent offers ranging from $1,566 to $5,000 in the months leading up to trial. After a one-day trial, a jury returned a verdict in Gurule's favor and awarded her $1,131.39 in compensatory damages. The district court subsequently awarded her $1,131.39 in liquidated damages and $25,089.30 in attorney's fees. *See* 29 U.S.C. § 216(b) (providing for liquidated damages equal to compensatory damages and reasonable attorney's fees). Because she had declined Gaslamp's more favorable Rule 68 offer in February 2016, however, Gurule was ordered to pay Gaslamp $1,517.57 in costs. *See* FED. R. CIV. P. 68(d) (if offeree's final judgment is "not more favorable than the unaccepted offer," offeree "must pay the costs incurred after the offer was made"); *see also Marek v. Chesny*, 473 U.S. 1, 5-12 (1985) (discussing Rule 68).

Matte and Taylor timely appealed the summary judgment grant, and Gaslamp timely cross-appealed the district court's attorney's fee award.

## II.

We first address Matte and Taylor's challenge to the summary judgment dismissing their FLSA claim. We review that judgment *de novo*, applying the same legal standards as the district court and drawing all justifiable factual inferences in favor of the non-moving party. *Hemphill v. State Farm Mut. Auto. Ins. Co.,* 805 F.3d 535, 538 (5th Cir. 2015). Summary judgment is proper "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Matte and Taylor raise no argument on appeal concerning the only issue litigated at summary judgment—namely, whether they failed to prove a prima facie FLSA case by relying solely on Gurule's "representational testimony" about her own hours and tips. They instead argue that Gaslamp did not actually move for

No. 17-20710

summary judgment on their "minimum wage" claim at all, but instead challenged only their "stolen tip" claim. We disagree.

The district court addressed and rejected this argument in response to Matte and Taylor's pre-trial "Memorandum of Law," which argued that the summary judgment order "did not dispose of [their] minimum wage claims" but instead addressed only their "stolen tip" claims. The district court correctly concluded that these two claims were one and the same: "Plaintiffs' theory of the case is that because Defendants diverted their tips, they failed to satisfy the condition of the tip credit and therefore violated the FLSA requirement to pay the minimum wage. Th[ese] [are] not two separate causes of action but rather one for failure to pay minimum wage." *See, e.g., Montano v. Montrose Rest. Assoc., Inc.*, 800 F.3d 186, 188 (5th Cir. 2015) (discussing "tip credit exception" to FLSA "that permits employers to pay less than the minimum wage—$2.13 per hour—to a 'tipped employee' as long as the employee's tips make up the difference between the $2.13 minimum wage and the general minimum wage"); 29 U.S.C. § 203(m). The court also correctly pointed out that Gaslamp's summary judgment motion presented the "minimum wage" and "stolen tip" claims as "one legal theory," and that the court's summary judgment order did the same. We agree with the district court that its summary judgment disposed of Matte and Taylor's minimum wage claim and we therefore affirm that judgment.[2]

---

[2] Alternatively Matte and Taylor argue that—even assuming their minimum wage claim was raised by Gaslamp's summary judgment motion—Gaslamp's own evidence of their payroll records should have "defeated" summary judgment by (1) showing that Gaslamp paid them below $7.25 per hour and (2) failing to establish that Gaslamp satisfied the FLSA tip credit provision. *See, e.g., Montano*, 800 F.3d at 188-89. We decline to reach this convoluted argument (which occupies barely one total page of their opening brief) because Matte and Taylor did not raise it in opposition to summary judgment below. *See, e.g., Keelan v. Majesco Software, Inc.*, 407 F.3d 332 (5th Cir. 2005) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.") (internal quotations and citation omitted).

No. 17-20710

III.

We turn to Gaslamp's argument that the district court abused its discretion in awarding Plaintiffs' counsel $25,089.30 in attorney's fees. The FLSA provides that the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant[.]" 29 U.S.C. § 216(b). This circuit uses the analysis in prevailing party cases to set FLSA fee awards. *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 n.7 (5th Cir. 2006). Courts calculate a "lodestar" by multiplying the hours reasonably spent on the case by an appropriate hourly rate. *Id.* (citing *Heidtman v. Cty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999)). Courts may then adjust that amount based on the twelve *Johnson* factors. *Id.* at 800; *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).[3] While "the most critical factor in determining an attorney's fee award is the degree of success obtained," *Saizan*, 448 F.3d at 799, "'a low damages award alone … should not lead the court to reduce a fee award.'" *Black v. SettlePou, P.C.*, 732 F.3d 492, 503 (5th Cir. 2013) (quoting *Saizan*). We review challenges to a district court's lodestar adjustment for abuse of discretion, and specifically to "determine if the district court sufficiently *considered* the appropriate criteria." *SettlePou*, 732 F.3d at 502 (quoting *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995)) (emphasis in original).

The district court provided a "concise but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Although

---

[3] The *Johnson* factors are: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*

No. 17-20710

Plaintiffs' counsel sought a lodestar of $129,565.00 (based on 281 attorney hours and 31.8 legal assistant hours), in response to Gaslamp's objections the court excluded several items, such as (1) a 29.1% reduction for time expended on Matte and Taylor's dismissed claims; (2) a 10% reduction for "block billing"; and (3) a 20% reduction for "lack of reasonable billing judgment." The court also excluded hours claimed for legal assistants given the lack of evidence of their prevailing market rate. The court therefore calculated the lodestar by multiplying the resulting number of non-excluded hours (139.384) by $450 per hour, which the court concluded was a reasonable rate for Plaintiffs' counsel. This resulted in a lodestar of $62,722.80.

Next the court considered whether the *Johnson* factors counseled an adjustment to the lodestar. The court reasoned that six of those factors (time and labor required; novelty and difficulty of issues; skill required; preclusion of other employment; amount involved and results obtained; and awards in similar cases) "weigh[ed] in favor of a downward departure" whereas six were "neutral." The court's analysis properly recognized that the "most critical factor in determining a fee award—the degree of success obtained—strongly support[ed] a downward departure":

> Here, only one of the four Plaintiffs prevailed at trial. Plaintiff Gurule was awarded $1,131.39 in compensatory damages, which is far less than the $25,683.66 that she requested in her disclosures. This recovery was also less than the four offers of judgment that Defendants made to Plaintiff Gurule between February 17, 2016 and September 6, 2017. While Defendants' offers of judgment ranged from $1,566 to $5,000, the only counter offer from Plaintiff Gurule was for $51,367.32. This number is nearly twice the amount of Plaintiff Gurule's damages disclosure and 45 times the amount of damages awarded at trial. Although there may be good reason for the gap between Plaintiffs' expectations and reality, Plaintiffs' counsel has not shown that he exercised good judgment in obtaining successful results.

7

No. 17-20710

Consequently, the court concluded that, "[b]ased on [the *Johnson*] factors, the unique facts of this case, and other comparable cases, … a downward departure of 60 percent of the lodestar is warranted." The court therefore calculated the lodestar by 55.754 hours instead of 139.384 hours, resulting in a total fee recovery of $25,089.30.

On appeal, Gaslamp argues that even this reduced fee award was an abuse of discretion because the district court failed to adequately consider Gurule's actual degree of success—or, more precisely, her lack thereof. *See, e.g., Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("'degree of success obtained'" is "'most critical factor'" in setting fee award) (quoting *Hensley*, 461 U.S. at 436). Gaslamp first points out that the $25,089.30 fee award is grossly disproportionate to Gurule's net recovery of $745.21 (that is, Gurule's total award of $2,262.78 minus the $1,517.57 in costs Gurule had to pay for rejecting the Rule 68 offer). Second, and relatedly, Gaslamp points to the fact that over a year before trial Gurule's attorneys rejected a Rule 68 offer that would have given her more ($3,133.44) than she obtained at trial. Gaslamp thus contends that her attorneys should have been granted no fees at all or, at best, a "substantially reduced nominal award[.]" We address each argument in turn.

First, we consider Gaslamp's proportionality argument. It is true that "'proportionality is an appropriate consideration'" in assessing a fee award. *Saizan*, 448 F.3d at 802 & n.42 (quoting *Hernandez v. Hill Country Tel. Co-op*, 849 F.2d 139, 144 (5th Cir. 1988)). It is also true that the disproportion between the fees awarded Gurule's attorneys and what Gurule netted is eyebrow-raising. As Gaslamp noted, the $25,089.30 award was *thirty-three* times Gurule's net recovery (and even without deducting Gurule's offsetting costs, the award was still *eleven* times her damages). Gaslamp relies heavily on our decision in *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998), to argue that this degree of disproportion alone should nix the fees. There is force

8

in this argument. In *Migis*, after all, "[w]e … reversed an award of attorney's fees where … the resultant fee award was over six and one-half times the amount of damages awarded." *Saizan*, 448 F.3d at 802 (citing *Migis*).

Yet our court "ha[s] consistently emphasized that 'there is no *per se* requirement of proportionality in an award of attorney fees.'" *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 396 (5th Cir. 2016) (quoting *Branch-Hines v. Hebert*, 939 F.2d 1311, 1322 (5th Cir. 1991)) (and collecting decisions). We have also explained that "*Migis* does not impose a strict proportionality requirement." *Combs*, 829 F.3d at 397. Rather, the key flaw in *Migis* was that "[t]he district court's meager 10% reduction of the fee award … failed to adequately consider just how limited the plaintiff's success was." *Id.* (citing *Migis*, 135 F.3d at 1047). We have a different story here. Instead of overlooking Gurule's relative lack of success, the district court emphasized it. Among other things, the court pointed out the chasm between what Gurule sought and what little she recovered and, as a result, reduced the lodestar by 60 percent. Given a district court's leeway in adjusting the lodestar and its "superior understanding of the litigation," *Hensley*, 461 U.S. at 437, we cannot say that this considerable reduction was an abuse of discretion merely because the court did not reduce fees further. To the contrary, the district court's "concise but clear explanation of its reasons for the fee award … ma[d]e clear that it ha[d] considered the relationship between the amount of the fee awarded and the results obtained." *Id.* We therefore reject Gaslamp's argument that the fee award was an abuse of discretion solely due to the disproportion between the award and the plaintiff's actual recovery. *See SettlePou*, 732 F.3d at 403 ("[W]hile the district court must take the degree of success obtained into account, it would be an abuse of discretion for the district court to reduce [the] attorney's fee award solely on the basis of the amount of damages obtained.").

No. 17-20710

Second, we consider Gaslamp's argument that Gurule's rejection of the better Rule 68 offer should further reduce, or outright preclude, the fee award.

If an offeree rejects a timely pretrial settlement offer and the judgment finally obtained is "not more favorable than the offer," Rule 68 requires the offeree to "pay the costs incurred after the making of the offer." FED. R. CIV. P. 68(d). "The plain purpose of Rule 68 is to encourage settlement and avoid litigation," including litigation over civil rights. *Marek*, 473 U.S. at 5, 10. Sometimes Rule 68's operation necessarily includes attorney's fees: where the relevant statute defines "attorney's fees" as part of "costs"— as does 42 U.S.C. § 1988—"such fees are subject to the cost-shifting provision of Rule 68." *Id.* at 9; *see also id.* at 10 ("Civil rights plaintiffs … who reject an offer more favorable than what is thereafter recovered at trial will not recover attorney's fees for services performed after the offer is rejected."); *Int'l Nickel Co., Inc. v. Trammel Crow Distrib. Corp.*, 803 F.2d 150, 157 (5th Cir. 1986) (recognizing this rule and citing *Marek*); 42 U.S.C. § 1988(b) (in action to enforce *inter alia* § 1983, allowing "a reasonable attorney's fee as part of the costs"); *see also generally* 12 WRIGHT, MILLER & MARCUS, FED. PRAC. & PROC. § 3006.2 (where statute defines attorney's fees as part of costs, "a plaintiff who declines a Rule 68 offer and fails to obtain a more favorable judgment may not recover attorneys' fees for postoffer legal work, just as it may not recover other postoffer costs").

This case, however, involves the FLSA fee-shifting provision, which defines "attorney's fees" separately from "costs." *See* 29 U.S.C. § 216(b) (allowing "a reasonable attorney's fee to be paid by the defendant, and costs of the action"). Thus Rule 68 does not *preclude* a fee award in FLSA cases, despite the prevailing plaintiff's previous rejection of a better offer. *See, e.g.,* 12 WRIGHT, MILLER & MARCUS § 3006.2 ("If the underlying fee-shifting statute does not define attorneys' fees as a part of costs, the making of a Rule 68 offer does not automatically cut off plaintiff's right to seek a fee award for post-offer

legal work."). But several sister circuits have held that the rejected offer should nonetheless be considered in assessing the reasonableness of an attorney's fee award. *See McKelvey v. Sec'y of U.S. Army*, 768 F.3d 491, 495 (6th Cir. 2014) (observing that "many courts applying various fee-shifting statutes have measured success [in setting fee awards] in part on this basis") (citing *Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011); *Lohman v. Duryea Borough*, 574 F.3d 163, 167-69 (3rd Cir. 2009); *Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000); *Dalal v. Alliant Techsystems, Inc.*, 182 F.3d 757, 761-62 (10th Cir. 1999); *Sheppard v. Riverview Nursing Ctr., Inc.*, 88 F.3d 1332, 1337 (4th Cir. 1996); *Haworth v. Nevada*, 56 F.3d 1048, 1052 (9th Cir. 1995)); *see also generally* 12 WRIGHT, MILLER & MARCUS § 3006.2 at 155-58 & nn. 6-7 (collecting decisions). Gaslamp directs us particularly to the Ninth Circuit's decision in *Haworth v. Nevada*, which held that, "[w]hen a plaintiff rejects a Rule 68 offer, the reasonableness of an attorney fee award under the FLSA will depend, at least in part, on the district court's consideration of the results the plaintiff obtained by going to trial compared to the Rule 68 offer." 56 F.3d at 1052. Other circuits have taken similar views. *See, e.g., Dalal*, 182 F.3d at 761 (under ADEA fee-shifting provision, 29 U.S.C. § 626(b), "the reasonableness calculation must take the fact of the [more favorable] Rule 68 offer into account") (citing *Haworth*, 56 F.3d at 1052-53); *Sheppard*, 88 F.3d at 1337 (under Title VII fee-shifting provision, 42 U.S.C. § 2000e-5(g)(2)(B), court "may consider" a prevailing plaintiff's "rejection of a settlement offer as one factor affecting its decision whether to award fees or in what amount").

No. 17-20710

While our circuit has not squarely addressed this issue,[4] we find the approach of our sister circuits persuasive. Courts have long understood that the "most critical factor" in a reasonable fee is a prevailing party's "degree of success." *See, e.g., Hensley*, 461 U.S. at 436. In measuring that success, a court should ask whether the party would have been *more* successful had his attorney accepted a Rule 68 offer instead of pressing on to trial. As one treatise puts it: "In setting reasonable attorneys' fees, a court is to look at the results obtained, and it need not close its eyes to the reality that plaintiff's post-offer legal work produces a net loss." 12 WRIGHT, MILLER & MARCUS § 3006.2; *see also, e.g., Marek*, 473 U.S. at 11 ("In a case where a rejected settlement offer exceeds the ultimate recovery, the plaintiff—although technically the prevailing party—has not received any monetary benefits from the postoffer services of his attorney."); *McKelvey*, 768 F.3d at 495 ("Few, if any, reasonable litigants would call a monetary judgment that comes in well under the money offered to settle the case a success.").

We thus hold that in setting a reasonable attorney's fee under a fee-shifting statute such as 29 U.S.C. § 216(b),[5] a court should consider the prevailing party's rejection of a Rule 68 offer that was more favorable than the judgment obtained. We emphasize that, consistent with other circuits, "this potential measure of lack of success is one factor among many that a district court may consider in exercising the discretion the [fee-shifting] statute gives it." *McKelvey*, 768 F.3d at 495; *see also, e.g., Haworth*, 56 F.3d at 1052-53

---

[4] A separate opinion in *Migis* previously urged adopting this approach to rejected settlement offers in the Title VII context. *See Migis*, 135 F.3d at 1062 (Barksdale, J., concurring in part and dissenting in part).

[5] We emphasize that our decision does not address the situation where a fee-shifting statute—unlike the FLSA—defines attorney's fees as part of "costs." *Cf., e.g., McKelvey*, 768 F.3d at 497-98 (explaining FLSA "defines fees separately from costs"). As explained, rejecting a better Rule 68 offer in that situation *precludes* post-offer fees. *See Marek*, 473 U.S. at 9-10.

No. 17-20710

(suggesting as a non-exclusive list of factors "the amount of the Rule 68 offer, the stage of the litigation at which the offer was made, what services were rendered thereafter, the amount obtained by judgment, and whether it was reasonable to continue litigating the case after the Rule 68 offer was made").

Applying that principle here, we find that the district court appropriately considered in its fee award Gurule's rejection of Gaslamp's Rule 68 offer. The court's opinion expressly considered the amount and timing of Gaslamp's initial and subsequent offers, noted "the gap between Plaintiffs' expectations and reality" shown by their response to those offers, and for that reason criticized Gurule's counsel for failing to exercise "good judgment in obtaining successful results." The court thus appropriately factored the rejection of Gaslamp's better offers into its 60 percent downward adjustment of the lodestar. *See, e.g., McKelvey*, 768 F.3d at 498 (finding no abuse of discretion where district court made 50 percent reduction to lodestar in light of rejected settlement offers). Given the district court's discretion in setting fees, and "in view of the [its] superior understanding of the litigation," we reject Gaslamp's argument that the court failed to adequately account for the spurned Rule 68 offer in its fee award. *See, e.g., Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 358 (5th Cir. 1990) (explaining that the party challenging an award of attorney's fees "faces our narrow standard of review" on appeal).

## IV.

We AFFIRM the grant of summary judgment dismissing Matte and Taylor's claims and AFFIRM the attorney's fee award to Plaintiffs' counsel.

13

No. 17-20710

JAMES C. HO, Circuit Judge, concurring:

Attorneys are fiduciaries. As such, they must expend client resources prudently—to serve the best interests of the client, not the attorney.

This principle applies with special force when an attorney fee is paid, not by a consenting client, but by an opposing party, pursuant to a fee-shifting statute. As we have long observed, Congress enacts fee-shifting statutes "not . . . for the benefit of attorneys but to enable litigants to obtain competent counsel." *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 719 (5th Cir. 1974).

It is thus well established that an attorney fee must be "reasonable," whether it is paid by a client or an opposing party.[1]

To state the obvious, it is not reasonable for an attorney to charge for time spent on tasks that lack any reasonable prospect of creating value for the client. After all, to charge for that time would benefit only the attorney, not the client. Yet the practice is sufficiently widespread that a term has been coined for it: churning.[2]

To be sure, not every attorney task will ultimately pay off for the client, even amongst the most conscientious of counsel. A legal theory might seem genuinely promising at the outset, but ultimately bear no fruit. Attorney time may be reasonably spent, even if it does not actually result in client value.

---

[1] *See*, *e.g.*, TEXAS RULES OF PROFESSIONAL CONDUCT Rule 1.04(a) ("A lawyer shall not . . . charge, or collect an illegal fee or unconscionable fee. A fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is *reasonable*.") (emphasis added); 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a *reasonable* attorney's fee to be paid by the defendant, and costs of the action.") (emphasis added).

[2] *See*, *e.g.*, Peter Lattman, *Suit Offers a Peek at the Practice of Inflating a Legal Bill*, N.Y. TIMES (March 25, 2013), https://dealbook.nytimes.com/2013/03/25/suit-offers-a-peek-at-the-practice-of-padding-a-legal-bill/ ("[C]hurning, while not endemic, is an insidious problem in the legal profession. In a survey of about 250 lawyers . . . more than half acknowledged that the prospect of billing extra time influenced their decision to perform pointless assignments, such as doing excessive legal research or extraneous document review.").

14

That is why we have said that we do not reduce attorney fees "*solely* on the basis of the amount of damages obtained." *Black v. SettlePou, P.C.*, 732 F.3d 492, 503 (5th Cir. 2013) (emphasis added). But that does not alter the fact that "[t]he most critical factor in determining an attorney's fee award is the 'degree of success obtained.'" *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (quotations omitted) (quoting *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003)).

These principles are not in conflict. Here's how to reconcile them: Attorney time must be spent in service of the best interests of the client. So where attorney time exceeds client value to a significant degree, courts should be suspicious. The overarching question that courts should ask in such circumstances is whether the attorney expended the time in a good faith pursuit of value for the client—or was instead engaged in churning attorney fees. If the former, the time may be awarded, even though it ultimately proved fruitless. If the latter, the churned time should be denied.

The opinion of the court champions these values, and I am delighted to join it. I write separately simply to point out that, consistent with *Johnson*, the district court could have (and perhaps should have) gone further. If an attorney cannot explain how time was spent in the good faith pursuit of client value, then a district court would be right not only to reduce the fee devoted to a wasted task, but to eliminate the fee altogether. For example, if the attorney in this case cannot offer a reasonable explanation as to how the time spent after rejecting the settlement offer was expended in a good faith pursuit for a higher judgment, the district court would have been well within its discretion to reduce post-offer fees to zero. And the same principle would of course apply to a case of attorney waste where no settlement offer was ever made. I concur.