600 So.2d 929 (1992)
Arliss G. NOLAN, Plaintiff-Appellant,
v.
S & W STEEL FABRICATORS, INC. and Tensas Construction Company, Inc., Defendants-Appellees.
No. 23582-CA.
Court of Appeal of Louisiana, Second Circuit.
May 29, 1992.
*930 Johnson & Placke by Don H. Johnson, West Monroe, for Arliss G. Nolan, plaintiff-appellant.
Lunn, Irion, Johnson, Salley & Carlisle by Charles W. Salley, James A. Mijalis, Shreveport, for S & W Steel Fabricators, defendant-appellee.
Hayes, Harkey, Smith, Cascio & Mullens by John B. Saye, Monroe, for Tensas Const. Co., defendant-appellee.
Before SEXTON, HIGHTOWER and VICTORY, JJ.
SEXTON, Judge.
Plaintiff Arliss G. Nolan appeals the district court's granting of motions for summary judgment filed by defendants S & W Steel Fabricators, Inc. (S & W) and Tensas Construction Company, Inc. (Tensas). We affirm.
On March 2, 1989, plaintiff was instructed by his supervisor at Willamette Industries, Inc. (Willamette) in Ruston to remove accumulated trash from under a conveyor. While in the process of cleaning out wood debris from under the "tailspool" of Conveyor Number 1, plaintiff's shirt sleeve became entangled in the conveyor belt and his arm was pulled into the conveyor, resulting in serious injury to his arm and shoulder.
Willamette manufactures plywood at its Ruston Division and the manufacturing process produces substantial amounts of wood chips, sawdust, and other debris resulting from peeling the logs, clipping the sheets, and other aspects of assembling the finished plywood product. Although the factory employs a series of conveyor belts to move the wood residue from one location to another, it is common for debris to fall off the conveyor system, necessitating manual cleanup at locations where an accumulation of this debris could disturb the operation of the conveyor system.
The plywood manufacturing facility is essentially divided into two sections, the "green" and the "dry." On the green end, the logs are presoaked in hot water to get the wood fibers to swell and to make them easier to cut. These logs are then placed on a lathe, where a thin "sheet" of wood is sliced off the log. This "sheet" travels along a conveyor to a clipper where it is cut into smaller sheets which can be further trimmed to produce the outer layers for a sheet of plywood measuring four feet wide by eight feet long. If the sheet can satisfy those dimensions, then it will be used for the front or the back of the plywood; if it is too small, then it will combined with other remnants for the internal layers of the plywood.
After the wood has been processed on the "green" end of the plant, it is conveyed to the "dry" end where these sheets are dried before being layered together into sheets of plywood.
In addition to the conveyor system which transports the wood sheets throughout the plant, there is, operating in conjunction, a "trash" conveyor system. The conveyor on which plaintiff was injured is located at the beginning of the trash conveyor system and feeds into an incline conveyor which then transports the trash to its next transfer point.
*931 Approximately six months prior to plaintiff's accident, Willamette underwent a major renovation at their Ruston Division wherein the entire plant was substantially modified and virtually all of the "green" end of the plant, except the conveyor on which plaintiff was injured, was replaced or modified. As part of that renovation, Willamette's engineering department designed new conveyors and other equipment. S & W fabricated and delivered the new equipment, and Tensas removed or relocated the existing equipment and set up the new equipment. An electrical contractor which is not a party to this appeal connected all of the new, modified, and existing equipment to a central power source and a computer unit which controlled the operation of the various pieces of equipment.
Subsequent to plaintiff's injury, a guard was placed over the offending tailspool and, still later, the conveyor was realigned to address a problem concerning broken conveyor belts.
Plaintiff filed suit against S & W and Tensas, alleging a products liability cause of action against them as "manufacturers" of the conveyor system which had incorporated the existing Conveyor Number 1, which had injured plaintiff. S & W and Tensas filed motions for summary judgment, accompanied by affidavits, and argued that, as a matter of law, they could not be held liable to plaintiff for his injuries because they had nothing to do with the conveyor which injured plaintiff. Alternatively, they argued that they were immune from liability under LSA-R.S. 9:2771[*] because they constructed and installed their work product according to plans and specifications submitted to them by Willamette. Following argument, the district court granted both motions.
Plaintiff now brings this appeal, arguing that neither S & W nor Tensas is entitled to summary judgment because the extent to which they worked on Conveyor Number 1 is a genuine issue of material fact. S & W and Tensas both argue that they had nothing to do with Conveyor Number 1. Alternatively, they argue that, under LSA-R.S. 9:2771, they are immune from liability.
A summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966; Billingsley v. Bach Energy Corp., 588 So.2d 786 (La.App.2d Cir. 1991). The burden of proof in a motion for summary judgment is on the mover to establish that there are no genuine issues of material fact. This burden is a great one as only when reasonable minds must inevitably concur is summary judgment warranted and any doubts should be resolved in favor of a trial on the merits. Billingsley v. Bach Energy Corp., supra; Ouachita National Bank (Premier Bank, N.A.) v. Palowsky, 570 So.2d 114 (La.App.2d Cir. 1990).
If the supporting documents presented by a party moving for summary judgment are sufficient to resolve all genuine issues of material fact, the burden then shifts to the opposing party to present evidence beyond the allegations and denials contained in the pleadings, showing that material facts are still at issue. Billingsley v. Bach Energy Corp., supra; Dement v. Red River Valley Bank, 506 So.2d 1329 (La.App.2d Cir.1987).
In support of its motion for summary judgment, Tensas argued that it did not install, construct, repair, or modify the conveyor belt on which plaintiff was injured. *932 Attached to its motion were affidavits executed by Robert T. Harold, president of Tensas, and Russ Stoppleworth, superintendent of the Ruston Division of Willamette Industries, Inc.
Harold's affidavit indicated that the tailspool on which plaintiff was injured was neither installed, nor modified, nor repaired by Tensas. Stoppleworth's affidavit was to the same effect and further noted that the conveyor in question was installed prior to 1978.
The motion for summary judgment by S & W was similar to that filed by Tensas and included affidavits by George Dayle Williams, president of S & W; Russ Stoppleworth; and Jim Dance, general foreman for the Ruston Division of Willamette Industries.
Williams' affidavit indicated that S & W did not manufacture any part of the conveyor which injured plaintiff and had never performed maintenance or repair operations on it. Stoppleworth's affidavit was essentially the same as his other affidavit, except that it exculpated S & W rather than Tensas. Dance's affidavit also indicated that S & W neither manufactured Conveyor Number 1, nor did S & W perform maintenance or any other type of work on it.
Depositions of Stoppleworth and Dance were filed into the record, and a lengthy deposition of Steve Blackwelder, who was the project engineer overseeing the renovation, was filed into the record on March 20, 1991.
Plaintiff filed an opposition to the two motions for summary judgment, arguing that there were genuine issues of material fact and further arguing that the affidavits filed by the defendants were not dispositive of the factual issues on which the liability of the defendants could be based. Attached to the opposition were quotation submittals by S & W and Tensas; however, plaintiff submitted nothing which contradicted anything contained in the various defense affidavits.
In Steve Blackwelder's deposition, he testified that all of the work performed on the renovation was done under the specifications, drawings, and supervision of Willamette, and that Conveyor Number 1 was not moved or modified in any way during the renovation project. He also testified that Willamette provided the design and plans for the renovation to S & W and Tensas, and that they were bound to follow those plans and could not deviate from the plans without getting approval from Willamette. Further, he testified that the contractors had not contracted to evaluate the safety guidelines and proper guarding of the equipment in the plant.
The linchpin of plaintiff's argument is that, by incorporating the defective conveyor into the largely new conveyor system, S & W and Tensas became "manufacturers" of Conveyor Number 1, relying on Spillers v. Montgomery Ward, Inc., 294 So.2d 803 (La.1974).
In the case of S & W, this argument is clearly without merit. S & W fabricated component parts of the new portions of the conveyor system, delivered them to Willamette, and took no part in the assembling or interconnection of the constituent parts into the whole. The resolution of this argument with regard to Tensas, while more difficult, similarly does not avail plaintiff.
Tensas counters plaintiff's argument by contending that under the instant circumstances it is not a manufacturer, but contends alternatively that if it is, it is protected by LSA-R.S. 9:2771. In deciding this cause, we avoid the question of whether Tensas is an actual manufacturer per Spillers v. Montgomery Ward, Inc., supra. Assuming arguendo that it is, we determine that it is protected by LSA-R.S. 9:2771. In so concluding, we are aware that LSA-R.S. 9:2771 does not strictly insulate a contractor, as the jurisprudence holds that a contractor is not relieved of liability to third persons if he has justifiable reason to believe that adherence to the plans and specifications would create a hazardous condition. Arnold v. Our Lady of the Lake Hospital, Inc., 562 So.2d 1056 (La.App. 1st Cir.1990). Thus, in cases of *933 the instant type, a question of fact is often presented on that issue. Arnold v. Our Lady of the Lake Hospital, Inc., supra; Van Alton v. Fisk Electric, Inc., 531 So.2d 1175 (La.App. 4th Cir.1988). In both Arnold and Van Alton, despite protestations by the contractors that they were following the plans and specifications submitted to them, the courts found genuine issues of material fact concerning whether the contractors should have suspected some deficiency in the plans and specifications.
In the instant case, however, there is no factual issue concerning Tensas' knowledge of any possible deficiencies in Conveyor Number 1. The record clearly shows that the plans and specifications drawn up by Willamette (or on its behalf by entities which are not parties to this appeal) did not involve Conveyor Number 1 except to the extent that it was tied into a central power source and computer by an electrical contractor which is not a party to this appeal.
Thus, Tensas did virtually no work involving Conveyor Number 1. It simply attached that rather large conveyor to the rest of the system as it had been designed by Willamette. It was the new system that Tensas worked on. Tensas did not deal with the conveyor physically, as the plans and specifications simply called for it to be attached to the new system. Further, this connection was accomplished on the opposite end of the conveyor from the location where plaintiff was injured, some 30 feet away.
In conclusion, there is no issue of material fact regarding the question of the plans and specifications. It is clear that Tensas had virtually nothing to do with Conveyor Number 1 and thus no reason to be aware of any defect. Therefore, even if Tensas is a "manufacturer" within the context of Spillers v. Montgomery Ward, Inc., supra (because they attached existing Conveyor Number 1 to the new system which they installed), Tensas is protected by LSA-R.S. 9:2771.
The judgment of the district court is therefore affirmed, and all costs of this appeal are assessed to the plaintiff-appellant.
AFFIRMED.
NOTES
[*] LSA-R.S. 9:2771, in its entirety, reads as follows:

No contractor shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. The provisions of this Section shall not be subject to waiver by the contractor.