# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 14, 2016

Lyle W. Cayce
Clerk

No. 15-20139

GIULLIAN STEELE; RAUL ALEMAN; YURY X. BASTOS; JARROD DENYER; SUSAN MCMILLAN; ET AL,

Plaintiffs - Appellees Cross-Appellants

v.

LEASING ENTERPRISES, LIMITED,

Defendant - Appellant Cross-Appellee

Appeals from the United States District Court
for the Southern District of Texas

Before JONES, WIENER, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

This case concerns an employer's ability to withhold a percentage of an employee's tips received by credit card to offset the fees associated with collecting credit card tips under the Fair Labor Standards Act ("FLSA"). One of Leasing Enterprises, Limited's restaurant chains (Perry's) retains 3.25% of its employees' tips when customers tip with credit cards. Because this deduction exceeded the direct costs of collecting credit card tips for Perry's' tipped employees, we affirm the district court's holding that Perry's violated 29 U.S.C. § 203(m). We also hold that the district court did not err by certifying a second conditional class, declining to award Plaintiffs liquidated damages,

## No. 15-20139

and concluding that Perry's did not willfully violate the FLSA. However, we conclude that the district court did abuse its discretion by declining to award Plaintiffs attorney's fees.

### I.

Leasing Enterprises, Limited owns Perry's Restaurants, LLC. Perry's operates a number of restaurants, primarily in Texas. Plaintiffs-Appellees constitute a class of servers employed by Perry's.

Perry's paid its servers who received tips from customers $2.13 per hour in base pay in accordance with 29 U.S.C. § 203(m) and 29 C.F.R. §§ 531.52, 531.59. However, when customers paid and tipped with a credit card, Perry's retained 3.25% of the tip to offset credit card issuer fees and other costs it incurred in collecting and distributing the tips. Perry's contends that it incurred two primary costs in converting servers' charged tips to cash: (1) the portion of credit card issuer fees attributed to tips, including swipe fees, charge backs, void fees, and manual-entry fees; and (2) expenses related to obtaining the additional cash to pay servers, including hiring armored vans to deliver cash.

Instead of paying servers their charged tips through their bi-weekly pay checks, Perry's chose to pay its servers their charged tips in cash on a daily basis.[1] Perry's voluntarily started this practice in response to servers' requests. In order to pay its servers their charged tips in cash on a daily basis, Perry's arranged for armored vehicles to deliver cash to each of its restaurants three times per week. Perry's' Chief Operating Officer testified that such frequent deliveries were necessary due to security concerns associated with keeping a large amount of cash on its premises.

---

[1] The Department of Labor has issued guidance requiring employers to transfer servers' tips by the next regular *pay* day. *See* U.S. Dept. of Labor Wage and Hour Division Opinion Letter FLSA2006-1.

2

No. 15-20139

In August 2009, Plaintiffs initiated this collective action. In their third amended complaint, they alleged that Perry's had violated the FLSA by charging its servers the 3.25% offset fee. On August 31, 2010, the district court entered a partial interlocutory judgment, holding that Perry's may offset credit card issuer fees, but not other costs associated with computers, labor, or cash delivery.

On October 15, 2010, the district court certified a conditional class of servers. This class included tipped workers employed by Perry's between January 12, 2007, and October 15, 2010. On January 17, 2013, the district court certified a second conditional class of servers. This class included tipped workers employed by Perry's only between December 15, 2010, and January 17, 2013. The second class excluded anyone who had also been employed by Perry's before December 15, 2010.

Following a bench trial, the district court issued findings of fact and conclusions of law, holding that Perry's' 3.25% offset violated the FLSA because the offset exceeded Perry's' credit card issuer fees. The court also held that Perry's' cash-delivery expenses could not be included in the offset amount because "[t]he restaurant's decision to pay it[s] servers in cash is a business decision, not a fee directly attributable to its cost of dealing in credit" and that Perry's had failed to prove fees related to cancellation of transactions and manual entry of credit card numbers, and therefore could not rely on these amounts to justify the amount of its offset. Finally, the court held that Perry's may not include other expenses, such as costs associated with bookkeeping and reconciliation of cash tips, in the offset amount because those costs are incurred as a result of ordinary operations only indirectly related to Perry's' tip policy. The court concluded that even if it included all of Perry's' indirect costs, the 3.25% offset fee exceeded Perry's' total costs.

3

No. 15-20139

The district court held that Perry's did not willfully violate the FLSA and, thus, declined to extend the statute of limitations from two to three years. The court also declined to award liquidated damages, finding that Perry's had implemented the offset practice reasonably and with the good faith belief that the offset complied with the FLSA. In its final judgment, the district court declined to award Plaintiffs attorney's fees, explaining that "the plaintiffs made superfluous assertions that needlessly increased the cost of litigation for all parties."[2]

Perry's timely appealed, challenging the district court's liability holding under the FLSA and its decision to certify the second class. Plaintiffs cross-appealed, challenging the district court's holdings that Plaintiffs were not entitled to attorney's fees, liquidated damages, or an extension of the limitations period from two to three years.

## II.

## A.

Following a bench trial, we review a district court's findings of fact for clear error and its legal conclusions de novo. *Bd. of Trs. New Orleans Emp'rs Int'l Longshoremen's Ass'n v. Gabriel, Roeder, Smith & Co.*, 529 F.3d 506, 509 (5th Cir. 2008). "A finding is clearly erroneous if it is without substantial evidence to support it, the court misinterpreted the effect of the evidence, or this court is convinced that the findings are against the preponderance of credible testimony." *Gabriel*, 529 F.3d at 509. We review factual findings based on incorrect legal principles de novo. *Flint Hills Res. LP v. Jag Energy, Inc.*, 559 F.3d 373, 375 (5th Cir. 2009).

---

[2] At this point, Plaintiffs had not yet moved for attorney's fees. Plaintiffs later filed a fee application on March 16, 2015. The district court never ruled on this motion.

No. 15-20139

## B.

Although the FLSA, 29 U.S.C. § 206(a)(1), mandates that employers pay employees a minimum wage of $7.25 per hour, employers may pay employees who receive tips from customers $2.13 per hour if the total amount of tips equals or exceeds the difference between the national minimum wage and $2.13.[3]  29 U.S.C. §§ 203(m)(2), 206(a)(1); 29 C.F.R. §§ 531.52, 531.59.  When an employer pays its employees under this structure, the employer claims a "tip credit."  *Montano v. Montrose Rest. Assocs.*, 800 F.3d 186, 188 (5th Cir. 2015).  Under § 203(m), an employer can only claim a tip credit if "all tips received by [a tipped] employee have been retained by the employee," subject to one exception not relevant here.  *Id.*   The employer carries the burden to prove its entitlement to the tip credit.  *Id.* at 189.

In this case we must determine whether an employer may offset employees' tips that a customer charges on a credit card to recover the costs associated with collecting credit card tips without violating § 203(m)'s requirement that the employee retains all the tips that the employee receives.  Specifically, we must determine if the employer violates that requirement when it offsets credit tips to recover costs that exceed the direct fees charged by the credit card companies.  Perry's contends that it may offset both credit card issuer fees and its own cash-delivery expenses and still claim a tip credit under 29 U.S.C. § 203(m).  Plaintiffs assert that Perry's may offset only an amount no greater than the total amount of credit card issuer fees.

Both parties rely on the only circuit court decision to address this issue, *Myers v. Copper Cellar Corp.*, 192 F.3d 546 (6th Cir. 1999).  In *Myers*, the

---

[3] "A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him . . . .  Whether a tip is to be given, and its amount, are matters determined solely by the customer, who has the right to determine who shall be the recipient of the gratuity."  29 C.F.R. § 531.52.

employer deducted a fixed 3% service charge from employee tips whenever a customer tipped by credit card to account for the discount rate charged by credit card issuers. *Id.* at 552. Because the employer always deducted a fixed percentage, the deduction sometimes rose above or fell below the fee charged on a particular transaction. *Id.* at 553. The employees challenged this deduction, arguing that any withholding of tips violates § 203(m). The Sixth Circuit disagreed, holding that "an employer may subtract a sum from an employee's charged gratuity which reasonably compensates it for its outlays sustained in clearing that tip, without surrendering its section 203(m) [tip credit]." *Id.* The Sixth Circuit determined that an employee does not "receive" a charged tip under § 203(m) until the "debited obligation [is] converted into cash." *Id.* The court noted that this conversion is predicated on the "payment of a handling fee to the credit card issuer." *Id.* at 554.

To reach that conclusion, the Sixth Circuit relied on 29 C.F.R. §§ 531.52 and 531.53. Section 531.52 defines tip as "a sum presented by a customer as a gift or gratuity in recognition of some service performed for him." Section 531.53 further clarifies that tips include "amounts transferred by the employer to the employee pursuant to directions from credit customers who designate amounts to be added to their bills as tips." The Sixth Circuit held that these two regulations make it clear "that a charged gratuity becomes a 'tip' only after the employer has liquidated it and transferred the proceeds to the tipped employee; prior to that transfer, the employer has an obvious legal right to deduct the cost of converting the credited tip to cash." *Myers*, 192 F.3d at 554. The court noted that "payment of a handling fee to the credit card issuer" is "required" for that liquidation. *Id.* at 553–54.

As recognized by the Sixth Circuit, the Department of Labor has long interpreted its regulations to permit employers to deduct credit card issuer fees. U.S. Dept. of Labor Field Operations Handbook § 30d05(a) (Dec. 9,

No. 15-20139

1988).[4]  In *Myers*, the Sixth Circuit added that such a deduction is allowed under the statute

> even if, as a consequence, some deductions will exceed the expense actually incurred in collecting the subject gratuity, *as long as* the employer proves by a preponderance of the evidence that, *in the aggregate*, the amounts collected from its employees, over a definable time period, have reasonably reimbursed it for no more than its total expenditures associated with credit card tip collections.

*Myers*, 192 F.3d at 554.  Following *Myers*, the Department of Labor amended its position to allow employers to deduct an average offset for credit card issuer fees as long as "the employer reduces the amount of credit card tips paid to the employee by an amount no greater than the amount charged to the employer by the credit card company."  *See* U.S. Dept. of Labor Wage and Hour Division Opinion Letter FLSA2006-1.[5]  The parties do not contest that an employer may deduct a fixed composite amount from credit card tips, so long as that composite does not exceed the total expenditures on credit card issuer fees, and still maintain a tip credit.  We agree.  Credit card fees are a compulsory cost of collecting credit card tips.  As a result, an employer may offset credit card tips for credit card issuer fees and still satisfy the requirements of § 203(m).[6]  However, our inquiry does not end with this holding.

---

[4] In this handbook, the Department also noted that an employer does not have to reimburse an employee for tips that it cannot collect because the credit card transaction was not completed.  U.S. Dept. of Labor Field Operations Handbook § 30d05(a) (Dec. 9, 1988).

[5] Although interpretations not found in the Federal Register are not binding on this court, we have relied on them to interpret ambiguous statutes and regulations.  *See, e.g., Montano*, 800 F.3d at 190–92.

[6] A number of district courts have also followed *Myers* and adopted this rule.  *See Kim v. Kum Gang, Inc.*, No. 12 Civ. 6344, 2015 WL 2222438, at *26–27 (S.D.N.Y. Mar. 19, 2015); *Widjaja v. Kang Yue USA Corp.*, No. 09-CV-2089, 2011 WL 4460642, at *7 (E.D.N.Y. Sept. 26, 2011); *Ash v. Sambodromo, LLC*, 676 F. Supp. 2d 1360, 1371–72 (S.D. Fla. 2009); *Gillis v. Twenty Three East Adams Street Corp.*, No. 04 C 4012, 2006 WL 573905, at *1–3 (N.D. Ill. Mar. 6, 2006).

No. 15-20139

## C.

Perry's concedes that its 3.25% offset always exceeded the total credit card issuer fees, including swipe fees, charge backs, void fees, and manual-entry fees. Perry's submitted demonstrative exhibits which showed that the total offset for each restaurant exceeded all credit card issuer fees by at least $7,500 a year, and by as much as $39,000 in 2012. As a result, Perry's argues that an employer may also deduct an average of additional expenditures associated with credit card tips and still maintain a tip credit under § 203(m). Although Perry's justified its 3.25% offset based on a number of other expenses before the district court, Perry's now maintains that credit card issuer fees and its cash-delivery expenses alone justify the 3.25% offset. In support, Perry's shows that on an aggregate basis (and across all restaurants), Perry's' expenses for collecting and distributing credit card tips to cash—including both credit card issuer fees and expenses for cash-delivery services—always exceeded the offset amount.[7]  We must determine whether deducting additional amounts for cash-delivery services violates § 203's requirement that the employee must keep all of his or her tips.

A Perry's corporate executive testified that it made a "business decision" to receive cash deliveries three times a week in order to cash out servers' tips each day and to decrease security concerns associated with keeping too much cash in the register. Importantly, this executive testified that it was only necessary to cash out servers each night because of employee demand, and that if it instead transferred the tips to the servers in their bi-weekly pay checks, the extra cash deliveries would not be necessary.[8]  The district court found that

---

[7] However, in nine individual restaurant-years, the offset did not exceed these costs.

[8] Perry's counsel conceded this fact at oral argument. At the bench trial, a Perry's executive also testified that if customers could only tip in cash, then it would require only two armored car services a month.

8

No. 15-20139

Perry's' cash-delivery system was "a business decision, not a fee directly attributable to its cost of dealing in credit." We agree.

In *Myers*, the Sixth Circuit allowed the employer to offset tips to cover reasonable reimbursement for costs "associated with credit card tip *collections*" and highlighted that credit card fees were "*required*" to transfer credit to cash.[9] 192 F.3d at 554–55 (emphasis added). That court emphasized that the employer's deductions were acceptable because "[t]he liquidation of the restaurant patron's paper debt to the table server required the predicate payment of a handling fee to the credit card issuer." *Id.* at 553–54. The Department of Labor incorporated a reading of *Myers* in an opinion letter:

> The employer's deduction from tips for the cost imposed by the credit card company reflects a charge by an entity outside the relationship of employer and tipped employee. However, it is the Wage and Hour Division's position that the other costs that [an employer] wishes the tipped employees to bear must be considered the normal administrative costs of [the employer's] restaurant operations. For example, time spent by servers processing credit card sales represents an activity that generates revenue for the restaurant, not an activity primarily associated with collecting tips.

U.S. Dept. of Labor Wage and Hour Division Opinion Letter FLSA2006-1. While it is unnecessary to opine whether *any* costs, other than the fees charged directly by a credit card company, associated with collecting credit card tips can ever be deducted by an employer, we conclude that an employer only has a legal right to deduct those costs that are *required* to make such a collection.

---

[9] The Sixth Circuit also recognized *Reich v. Priba Corp.*, 890 F. Supp. 586, 596 (N.D. Tex. 1995), noting that the district court's holding was "supported by persuasive logic" and describing that holding: "Accordingly, proof that the employer's standard deduction from its employees' credit card tips reasonably compensated it *only* for no more than the overall costs of processing credit card tips, *rather than other costs of doing business*, would have safeguarded the employer's statutory tip credit." *Myers*, 192 F.3d at 554 n.15 (second emphasis added).

No. 15-20139

Perry's made two internal business decisions that were not required to collect credit card tips: (1) Perry's responded to its employees' demand to be tipped out in cash each night, instead of transferring their tips in their bi-weekly pay checks,[10] and (2) Perry's elected to have cash delivered three times a week to address security concerns.[11]  Unlike credit card issuer fees, which every employer accepting credit card tips must pay, the cost of cash delivery three times a week is an indirect and discretionary cost associated with accepting credit card tips.  As the district court noted, this cash delivery was "a business decision, not a fee directly attributable to its cost of dealing in credit."  Moreover, Perry's deducted an amount that exceeded these total costs—credit card issuer fees and cash-delivery expenses—in nine of the relevant restaurant-years.

Allowing Perry's to offset employees' tips to cover discretionary costs of cash delivery would conflict with § 203(m)'s requirement that "all tips received by such employee have been retained by the employee" for employers to maintain a statutory tip credit.  Perry's has not pointed to any additional expenses that are the direct and unavoidable consequence of accepting credit card tips.  Because Perry's offset *always* exceeded the direct costs required to convert credit card tips to cash, as contemplated in § 203(m) and interpreted by the Sixth Circuit, we hold that Perry's' 3.25% offset violated § 203(m) of the

---

[10] A Perry's corporate executive conceded that paying its servers cash on a nightly basis was a business decision adopted to attract better employees.  Moreover, Perry's has not pointed to any evidence in the record suggesting that its servers were aware that if they received cash each night, their tips would be deducted by an additional percentage to cover that benefit.

[11] On appeal, Perry's did not challenge the district court's finding that the additional expenses Perry's asserted at trial (daily accounting for and reconciliation of credit card tips for cash exchange and bookkeeping) were required to convert credit card tips to cash would also be required if Perry's only accepted cash tips.

No. 15-20139

FLSA, and therefore Perry's must be divested of its statutory tip credit for the relevant time period.[12]

## III.

In their cross-appeal, Plaintiffs challenge the district court's determinations that Plaintiffs were not entitled to liquidated damages or an extension of the statute of limitations. These holdings turn on the district court's conclusions that Perry's acted in good faith and that Perry's did not willfully violate the FLSA respectively.

## A.

Plaintiffs contend that the district court erred by declining to award them liquidated damages.[13] We review a denial of liquidated damages under the FLSA for abuse of discretion. *Singer v. City of Waco*, 324 F.3d 813, 823 (5th Cir. 2003). Although 29 U.S.C. § 216(b) mandates liquidated damages when a district court finds an employer liable under § 206, the FLSA provides the following exception:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260. This court has held that "[a]n employer found liable under section 206 or section 207 has the 'substantial burden' of proving to the satisfaction of the trial court that its acts giving rise to the suit are both in good

---

[12] We note that Perry's asks this court to adopt a bright-line rule that any deduction less than or equal to 1% more than the highest credit card discount rate is de minimis and therefore not a violation of the FLSA. However, once again, though appealingly pragmatic, we find no support in the statute or Department of Labor regulations and guidance for such a rule.

[13] Liquidated damages double the total damages awarded. *See Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259, 267 (5th Cir. 1998).

faith and reasonable." *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990) (emphasis omitted). We have also held that good faith requires a "duty to investigate potential liability under the FLSA" and that ignorance cannot be the basis of a reasonable belief. *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979). If an employer "suspect[s] that [it is] out of compliance with the FLSA," it cannot act in good faith. *Heidtman v. County of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999). Evaluation of the evidence supporting good faith and reasonableness, however, is a discretionary determination. *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 357 (5th Cir. 1990).

The district court found that Perry's acted reasonably and in good faith because (1) Perry's' offset was less than 1% higher than the national average of credit card issuer fees; and (2) the Department of Labor advised Perry's that its offset conformed with the FLSA. Perry's submitted the affidavit of Mark Collins, a former Vice President of Leasing Enterprises, describing a Department of Labor investigation into Perry's' practices regarding tip pools and charging employees for certain expenses.[14] Collins acknowledged that this investigation was not into any other tipping practice, but noted that the Department of Labor investigator informed him that "everything about Perry's Restaurant's handling of the tip pool and tip offsets was in order." Collins further stated that "[f]rom his dealings with the Department of Labor, he was under the impression that Perry's Restaurant was legitimately charging this offset to make up a part of the deficit of its cost to provide this extra service to its wait staff." Mark Henderson, another corporate executive of Leasing Enterprises, testified in a deposition that he had personal knowledge about the

---

[14] Although Plaintiffs maintain that Perry's did not submit any evidence of the Department of Labor investigation at trial, this affidavit and the deposition of Mark Henderson (and other summary judgment evidence) were submitted as exhibits at trial.

No. 15-20139

Department of Labor investigation and that he "remembered there being a feeling that [Perry's], wanted to go forward [with the 3.25% offset] knowing that [it] was in compliance."

Plaintiffs did not present any evidence explicitly contradicting this testimony that is probative of Perry's attempt to discover its compliance with the FLSA and its belief that its 3.25% offset was in compliance. In addition, Plaintiffs did not present any evidence showing that Perry's ever suspected that the offset violated the FLSA or that any employee questioned the practice. *Cf. Heidtman*, 171 F.3d at 1042. We also find it relevant that at the time Perry's adopted its policy, the Department of Labor had issued guidance allowing for an offset to cover credit card issuer fees, and the Sixth Circuit had decided *Myers*, but the Department of Labor had not issued its opinion letter interpreting *Myers* to not extend to deductions that exceed credit card issuer fees.[15] Moreover, Perry's' deduction exceeded the amount currently allowed under Department of Labor guidance—the total credit card issuer fees—by less than 1% each year. Given these circumstances, the district court did not abuse its discretion when it denied Plaintiffs liquidated damages. *See Halferty v. Pulse Drug Co.*, 826 F.2d 2, 3 (5th Cir. 1987); *D'Annunzio v. Baylor Univ.*, 193 F.3d 517, at *1 (5th Cir. 1999) (unpublished).

---

[15] The Department issued that opinion letter in 2006. U.S. Dept. of Labor Wage and Hour Division Opinion Letter FLSA2006-1. Although there is no evidence that Perry's was aware of the Sixth Circuit's decision, which we do not view as a clear and unambiguous holding that an employer can only offset credit tips by credit card issuer fees, the unsettled nature of the law is relevant. *See Laffey v. Nw. Airlines, Inc.*, 567 F.2d 429, 466 (D.C. Cir. 1976) ("[A]mbiguous or complex legal requirements may provide reasonable grounds for an employer's good faith but erroneous belief that he is in conformity with the Act."), *abrogated on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 134 (1988). Contributing to this uncertainty, the Department also had adopted the position, which it still maintains, that an employer does not have to give an employee credit card tips that it could not recover because the transaction was not completed. U.S. Dept. of Labor Wage and Hour Division Opinion Letter FLSA2006-1; U.S. Dept. of Labor Field Operations Handbook § 30d05(a) (Dec. 9, 1988).

No. 15-20139

## B.

Plaintiffs also challenge the district court's determination that Perry's did not willfully violate the FLSA.  Generally, FLSA claims are subject to a two-year statute of limitations, however the limitations period is three years for willful violations.  29 U.S.C. § 255(a).[16]  Willfulness is a question of fact that we review for clear error.  *Mireles*, 899 F.2d at 1416.  Plaintiffs have the burden of demonstrating willfulness.  *See Ikossi-Anastasiou v. Bd. of Supervisors of La. State. Univ.*, 579 F.3d 546, 552 (5th Cir. 2009); *Cox*, 919 F.2d at 356.  To show willfulness, a plaintiff must demonstrate that an employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133–34 (1988).  A negligent violation is not a willful violation, and an unreasonable violation does not "necessarily constitute a willful violation."  *Mireles*, 899 F.2d at 1416.

The only evidence that Plaintiffs put forth to show that Perry's willfully violated the FLSA is its continual violation following the interlocutory judgment that the district court issued on August 31, 2010.  In that judgment, the district court held that Perry's may not offset liquidation costs other than those incurred as credit card issuer fees.  Plaintiffs contend that because Perry's continued its offset policy for an additional three years, Perry's willfully violated the FLSA during that time.[17]  However, this court has held many times that an interlocutory order is not a final order.  *See, e.g., Stewart v.*

---

[16] This subsection reads in relevant part: "[E]very such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued[.]" 29 U.S.C. § 255(a).

[17] Perry's maintained the 3.25% offset until the district court issued its findings of fact and conclusion of law after the bench trial.  Plaintiffs did not put forth any evidence that Perry's willfully violated the FLSA before August 31, 2010.

*Kutner* (*In re Kutner*), 656 F.2d 1107, 1110-11 (5th Cir. Unit A 1981) ("[A]n interlocutory order is one that does not finally dispose of the entire case, but merely decides some incidental matter connected with the litigation."). The nonfinality of the August 31, 2010 judgment is evident by the district court's recognition that the judgment was not final and the district court's acknowledgement that the court often changes its position in the final judgment.[18]  Because Plaintiffs did not present any additional evidence showing willfulness, and we concluded that Perry's acted in good faith, the district court did not clearly err in holding that Perry's did not willfully violate the FLSA by maintaining its tip deduction after August 31, 2010 and therefore declining to enforce a three-year statute of limitations.

## IV.

We now turn to Perry's' challenge of the district court's certification of a second conditional class. We review a district court's certification of a class for abuse of discretion. *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003). The district court first certified a conditional class on October 15, 2010. The first class included tipped workers employed by Perry's between January 12, 2007, and October 15, 2010. On January 17, 2013, the district court certified a second conditional class. This second class included tipped workers employed by Perry's only between December 15, 2010, and January 17, 2013. Perry's asserts that the district court's certification of the second class constituted error because it allowed claimants who could have joined the first class—but did not—to take a second bite of the apple. Perry's contends that because the class two claimants failed to join the first class during the opt-in

---

[18] As the district court recognized, if Perry's stopped the practice after the interlocutory judgment, and the final judgment was in favor of Perry's, Perry's could not recover the amount it lost by stopping the practice prematurely.

period, they should have been limited to filing a second lawsuit.[19]   This argument ignores that, by definition, the class two claimants could not have joined the first class.  As expressly indicated in the district court's second certification order, only individuals employed by Perry's *after* the first class was certified, were permitted to join the second class;  therefore, the class two claimants were not employed by Perry's when the first class was certified.  The district court did not abuse its discretion by certifying the second class.

## V.

Finally, Plaintiffs challenge the district court's refusal to award attorney's fees due to Plaintiffs' "superfluous assertions that needlessly increased the cost of litigation for all parties."  We review a district court's award of attorney's fees under the FLSA for abuse of discretion.  *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006).  Citing 29 U.S.C. § 216(b), this court has held that "[r]easonable attorney's fees are mandatory" when a court finds that an employer has violated § 206.[20]  *Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1191 n.18 (5th Cir. 1979).  Section 216(b) also requires the district court to order the defendant to pay the costs of the action.  Although the district court has discretion to determine what is reasonable, the court does not have discretion to decline to award attorney's fees to a prevailing party without making such a determination.  The district court did not acknowledge this mandatory requirement or make a finding as to reasonability of the fees.  In fact, the district court made this determination

---

[19] Plaintiffs brought this action as a collective action under § 216(b) of the FLSA, not a class action under Rule 23 of the Federal Rules of Civil Procedure.

[20] Section 216(b) reads: "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

No. 15-20139

before Plaintiffs filed a motion to recover such fees.[21] Because the FLSA mandates the award of reasonable attorney's fees and costs, we remand for the district court to determine what fees Plaintiffs should be awarded.

## VI.

For the reasons stated, we affirm the district court's holding of liability, its certification of a second class, and its denial of liquidated damages and a three-year extension of the statute of limitations. However, we remand for the district court to award Plaintiffs attorney's fees that it deems reasonable under 29 U.S.C. § 216(b).

---

[21] Perry's argues that Plaintiffs waived their right to attorney's fees because they failed to request attorney's fees within fourteen days after entry of judgment in accordance with Federal Rule of Civil Procedure 54(d)(2)(B). This argument misstates the record: the judgment was entered on March 2, 2015, and plaintiffs filed their motion for attorney's fees on March 16, 2015.