# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30816

United States Court of Appeals
Fifth Circuit

**FILED**
March 1, 2017

Lyle W. Cayce
Clerk

LASHIP, L.L.C.; TERREBONNE PORT COMMISSION,

Plaintiffs - Appellants

v.

HAYWARD BAKER, INCORPORATED,

Defendant - Appellee

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:11-CV-546

Before JOLLY, HIGGINBOTHAM, and PRADO, Circuit Judges.

PER CURIAM:*

LaShip, LLC ("LaShip") and Terrebonne Port Commission ("TPC") brought this suit against Hayward Baker, Inc. ("HBI"), which performed soil stabilization work for a large shipbuilding facility in Houma, Louisiana. Trouble arose when the soil stabilization work began to fail. Disputes and finger-pointing ultimately gave rise to this litigation against HBI for, *inter alia*, breach of contract and negligent failure to warn under Louisiana law.

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 15-30816

The district court, after a ten-day bench trial, entered judgment for HBI, dismissing LaShip and TPC's claims. We AFFIRM.

I.

LaShip is the owner and operator of a shipbuilding operation in Houma, Louisiana. TPC is a political subdivision of the State of Louisiana. From 2007 to 2011, LaShip undertook the construction of a large shipbuilding facility in Houma (the "Project") on land that it owned and on land belonging to TPC but under lease to LaShip. Phases I and III of the Project were completed on LaShip's land; Phase II involved the bulkhead for the facility's waterfront access and was located on TPC's land.

LaShip retained Lyle Stover Engineering, Inc., now known as Holon Engineering and Construction LLC ("LSE/Holon"), to craft a design for the foundation system in Phases I and III. Based on the results of soil borings conducted by Burns, Cooley, Dennis, Inc. ("BCD"), David Lyle of LSE/Holon concluded that soil-mixed columns were an appropriate option to support the foundation system.

Drawing from the LSE/Holon design specifications and the soil boring tests performed by BCD, HBI submitted a bid to complete the soil mixing and drilled shaft work on the Project. In July 2008, LaShip accepted HBI's proposal. The contractual agreement between LaShip and HBI involved several documents: HBI's original proposal, the Revised Schedule of Price, the Performance Specifications, the Field Execution Plan, and a mobilization credit agreement.

The contractual agreement between LaShip and HBI called for HBI to install subterranean soil-mix columns to form the foundation of the shipbuilding facility and prevent it from falling victim structurally to the soft and compressible Louisiana soil. As part of its Project obligations, HBI was to obtain "wet grab" samples from two of the columns made each day to ascertain

2

the columns' strength. The sampling process required the lowering of a tool into the column at varying depths to recover a sample of the mixed material. The samples were then submerged in cylinders and tested for "unconfined compressive strength" intermittently over the course of twenty-eight days. Of the samples tested in Phase I, at least 90% possessed an unconfined compressive strength of at least 100 psi. All of the Phase II and III samples demonstrated a strength of at least 125 psi and 100 psi, respectively.

Some of the six-foot diameter columns that were installed met the strength requirements, but nonetheless exhibited unwelcome spiraling, indicative of the presence of both mixed and unmixed soil. In addition, HBI experienced several cave-ins during its installation of the drill shafts on some of the columns. In November 2008, against HBI's wishes, LaShip decided to abandon the 156 six-foot columns, move the footprint, and switch to eight-foot columns. HBI recommenced the installation in the new location but nonetheless continued to encounter difficulties.

No written contract linked HBI to TPC for HBI's work on Phase II of the Project, because TPC awarded the Phase II contract to F. Miller Construction, which then subcontracted with HBI to complete the soil-mixing job. The work for Phase II was completed in 2010.

Unwanted settlement of the foundation columns occurred during Phase III much like it did during Phase I. After all of the foundation columns had been installed, LaShip commissioned additional strength testing of the columns—the results of which exhibited a range of column strengths—and hired A.H. Beck Foundation Co. ("Beck") to perform what LaShip alleged to be remedial work on Phase I.

On January 21, 2011, LaShip filed suit in state court in the 32nd Judicial District Court for the Parish of Terrebonne, Louisiana, asserting numerous claims against HBI. In March 2011, HBI filed a notice of removal to federal

No. 15-30816

court on the basis of diversity. *LaShip, LLC v. Hayward Baker, Inc.*, No. 11-0546, 2013 WL 5781688, at *2 (E.D. La. Oct. 25, 2013). The federal district court dismissed LaShip's unjust enrichment claim, and its claims for breach of contract, negligence, and breach of the implied duty of workmanlike performance proceeded to trial. HBI, in turn, brought a counterclaim against LaShip for breach of contract when LaShip failed to compensate HBI for the additional soil mixing that it completed during Phase I. TPC joined the lawsuit on March 6, 2013, when it filed a negligence claim against HBI, contending that HBI's column installation was insufficient and that HBI acted negligently in failing to warn of a dangerous condition.

At the conclusion of a ten-day bench trial, the district court's 66-page ruling and judgment concluded with a holding in favor of LaShip with respect to a $375,000 mobilization refund that HBI owed to LaShip pursuant to their agreement. In addition, the court held that LaShip failed to prove by a preponderance of the evidence its remaining claims against HBI. The court issued judgment in favor of HBI on its breach of contract counterclaim against LaShip. It also found that TPC's claims against HBI were delictual in nature and were therefore prescribed because they were filed after the one-year cutoff date under Louisiana law. LaShip and TPC timely appealed.

## II.

When a judgment from a bench trial is appealed, we review the district court's conclusions of law de novo and findings of fact for clear error. *Steele v. Leasing Enterprises, Ltd.*, 826 F.3d 237, 242 (5th Cir. 2016). Factual findings are clearly erroneous if they lack "substantial evidence to support [them], the court misinterpreted the effect of the evidence, or this court is convinced that the findings are against the preponderance of credible testimony." *Id.* (quoting *Bd. of Trs. New Orleans Emp'rs Intern. Longshoremen's Ass'n v. Gabriel, Roeder, Smith & Co.*, 529 F.3d 506, 509 (5th Cir. 2008)).

4

No. 15-30816

III.

A.

LaShip contends that the district court erred in finding that HBI satisfied its contractual obligations to LaShip and that HBI owed no duty to warn LaShip about alleged defects in the design of the columns. Moreover, LaShip argues that the district court erred in instructing LaShip to compensate HBI for its installation of 156 columns that were later abandoned when the footprint of the facility was moved.

1.

Because jurisdiction in federal court was based on diversity of citizenship between the parties, the district court properly applied Louisiana law in analyzing LaShip's breach of contract claim. *See Mozeke v. Int'l Paper Co.*, 856 F.2d 722, 724 (5th Cir. 1988). To prevail on a claim of breach of contract in Louisiana, a plaintiff must prove the following by a preponderance of the evidence: "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *Favrot v. Favrot*, 68 So. 3d 1099, 1108-09 (La. Ct. App. 2011). The mutual intent of the parties dictates the terms of the contract, and when the terms of the contract are "clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIVIL CODE art. 2046. Furthermore, each provision of the contract should be interpreted in the light of the other provisions, so as to give meaning to each. LA. CIVIL CODE art. 2050.

Here, the district court based its holding on the express language of the Performance Specifications and found that LaShip failed to prove by a preponderance of the evidence that HBI breached the contract. It is undisputed that HBI fulfilled the Performance Specifications, namely that 90% of the Phase I and 100% of the Phase II and Phase III samples crossed the

minimum threshold for unconfined compressive strength.  LaShip's position is that the Performance Specifications were merely a component of HBI's overarching obligation to properly install soil-mixed columns—it is with respect to this ultimate obligation that LaShip contends HBI fell short. LaShip, however, is unable to point to a specific provision of the contract that HBI allegedly breached.

We commend the district court on its thorough decision. We find that the court did not err in identifying HBI's obligation under the contract as the installation of soil-mix columns "such that, when tested as set out in the specifications, 90 percent of the Phase I samples demonstrated an unconfined compressive strength of at least 100 psi." *LaShip, LLC v. Hayward Baker, Inc.*, No. 2:11-cv-00546-NJB-SS, slip op. at 29 (E.D. La. Aug. 13, 2015).  Moreover, because the express specifications were met and because LaShip could not identify a specific provision in the contract as a point of breach, we hold that the district court did not clearly err in determining that HBI did not breach the contract with LaShip.

2.

LaShip also asserts a negligent failure to warn claim on appeal.  It argues that the district court erred in finding that HBI owed no duty to warn LaShip about alleged defects in the design of the columns.  Although LaShip raised this argument in the district court for the first time in post-trial briefing, we need not address the merits of this tardy assertion because we conclude that HBI is statutorily immune from this claim under Louisiana Revised Statute 9:2771.  The applicable statute provides:

> No contractor, including but not limited to a residential building contractor . . . shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to

be made and if the destruction, deterioration, or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration, or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. . . .

LSA-R.S. 9:2771. Generally, a contractor may rely on LSA-R.S. 9:2771 to shield it from liability for any defects that may arise as a result of the contractor's adherence to plans and specifications that were provided to it. Such a contractor cannot escape liability, however, "if he has a justifiable reason to believe that adherence to plans and specifications would create a hazardous condition." *Oxley v. Sabine River Auth.*, 663 So. 2d 497, 504 (La. Ct. App. 3 Cir. 1995) (quoting *Nolan v. S&W Steel Fabricators, Inc.*, 600 So. 2d 929, 932 (La. Ct. App. 2 Cir. 1992)).

Here, HBI was given performance specifications that it did not "make or cause to be made." LSA-R.S. 9:2771. Furthermore, the district court found based on the evidence presented at trial that the settlement of the structure in Phases I and III stemmed from a design defect in the length of the columns. *LaShip*, slip op. at 47. Thus, the "defect was due to . . . fault or insufficiency of the plans or specifications." LSA-R.S. 9:2771. The statutory immunity, therefore, applies and relieves HBI of liability based on its installation of the columns according to the Performance Specifications. In addition, LaShip is unable to point to specific evidence indicating that HBI had a "justifiable reason to believe that adherence to the plans and specifications would create a hazardous condition." *Oxley*, 663 So. 2d at 504. LaShip instead underscores HBI's geotechnical expertise and asserts that HBI knew or should have known that the design was allegedly defective and thus had an affirmative tort duty

No. 15-30816

to warn LaShip.[1] We decline to broaden the scope of the affirmative tort duty of contractors under Louisiana law to the extent urged by LaShip. We therefore hold that HBI is immune from liability from the plaintiff's tort claim under LSA-R.S. 9:2771.[2]

3.

LaShip further challenges the district court's ruling in favor of HBI on HBI's counterclaim against LaShip. HBI asserted in its counterclaim that it was not compensated for the 156 soil-mix columns that it installed prior to LaShip's decision to move the facility footprint. LaShip argues that it does not owe HBI compensation for the 156 columns because they "were necessarily abandoned due to their defects and lack of reliability." HBI argues, in turn, that it disagreed with LaShip's decision to abandon the columns, a decision that was also opposed by LSE/Holon. Further, HBI asserts, LaShip did not allow HBI to load test the 156 columns before they were abandoned.

In deciding in favor of HBI, the district court considered the Project's Revised Schedule of Prices, which provided that "final payment will be based on the actual quantities." Both parties agreed that "HBI originally agreed to mix 40,290 cubic yards of soil on Phase I, but that HBI actually mixed 65,571.69 cubic yards of soil on that Phase." *LaShip*, slip op. at 64. In the light

---

[1] LaShip relies on the Louisiana case *Bunge Corp. v. GATX Corp.*, 557 So. 2d 1376 (La. 1990), in which the Louisiana Supreme Court held that the contractor of a grain storage tank had a duty to warn the owner of the possibility of rupture resulting from the contractor's construction of the tank. The *Bunge* court's reasoning was that "the superior knowledge of the builder" renders him logically in a position, when he "acquires knowledge that can prevent personal injury or property loss," to "convey that information to those for whom he has built." *Id.* at 1385. The court in *Bunge*, however, did not address statutory immunity under LSA-R.S. 9:2771. Moreover, the contractor in *Bunge* both designed and constructed the storage tank; such a situation is distinguishable from that of the instant case, in which HBI did not design the soil-mix column specifications. Thus, LaShip's reliance on *Bunge* is misplaced.

[2] Our holding on the negligent failure to warn issue encompasses any argument by LaShip that HBI negligently failed to warn it of a dangerous condition resulting from allegedly deficient column construction.

No. 15-30816

of this fact and other corroborating evidence, the court held that HBI was not compensated for 23,652.69 cubic yards of soil and thus requires compensation. *Id.* at 65. We agree with the district court's findings.

B.

We now turn to the claims of TPC against HBI. TPC contends that the district court erred in rejecting TPC's claim of *contra non valentem* and finding that TPC's claims were prescribed. Even if TPC's claims were not prescribed, the district court found that they would have nonetheless failed on the merits. TPC also appeals the district court's exclusion of the expert testimony of TPC witness Joseph Waxse and argues that the district court's reliance on HBI's experts was improper. We hold that the district court did not err in its findings and holdings.

1.

In general, Louisiana Civil Code Article 3492 applies a one-year prescription period to all delictual actions—that is, actions involving the causing of damages to another that are not governed by a contract. Specific to immovable property, Article 3493 provides, "[T]he one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage." LA. CIVIL CODE art. 3493. Although HBI completed its work on Phase II of the Project in 2010, TPC did not file suit until March 2013. Thus, the action is prescribed on its face. Louisiana case law recognizes that when an action is facially prescribed, the plaintiff bears the burden of proving that prescription was "interrupted, suspended, or renounced." *Gary v. Camden Fire Ins. Co.*, 676 So. 2d 553, 555 (La. 1996).

TPC contends that the doctrine of *contra non valentem* applies and should have suspended the running of prescription, thereby preserving the viability of TPC's claim. Under Louisiana law, the doctrine of *contra non valentem* suspends the running of prescription in "exceptional circumstances."

*Lapuyade v. Rawbar, Inc.*, 190 So. 3d 1214, 1220 (La. Ct. App. 2016).  Louisiana courts apply the doctrine of *contra non valentem* in four situations:

(1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;

(2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;

(3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or

(4) where the cause of action is neither known nor reasonably known by the plaintiff even though plaintiff's ignorance is not induced by the defendant.

*Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 245 (La. 2010).  The Louisiana Supreme Court has also noted that the analysis of the fourth prong of the *contra non valentem* doctrine and that of Article 3493 of the Louisiana Civil Code are the same, because they both involve the suspension of prescription until the plaintiff knew, or reasonably should have known, of the damage caused.  *Id.*  The key inquiry in the analysis is whether knowledge, either actual or constructive, existed to trigger the running of the prescriptive period.  To identify constructive knowledge, the court looks to "the reasonableness of the plaintiff's action or inaction in light of his education, intelligence, and the nature of the defendant's conduct." *Id.* at 246.

The district court concluded here that the *contra non valentem* doctrine was inapplicable because TPC failed to establish the "reasonableness of its inaction with respect to filing [a] lawsuit within the one year prescription period." *LaShip*, slip op., at 62.  The district court pointed out that the only evidence presented in support of TPC's *contra non valentem* argument was the testimony of TPC's Executive Director, David Rabalais.  Rabalais testified that he became aware for the first time in early 2013 that the soil-mixed columns

10

exhibited problems. He also noted, however, that TPC's engineer and representatives had continuously monitored the work site and HBI's installation of the soil-mix columns. The court reasoned that the ongoing presence of these officials on-site was sufficient to demonstrate the existence of constructive knowledge on the part of TPC. Thus, the court held that TPC could not rely on *contra non valentem* to shield it from prescription. We find that the district court thoroughly considered the evidence before it and agree with the district court's conclusion that TPC's claims against HBI were prescribed because they were filed after the one-year prescriptive period for delictual actions.

2.

TPC also contends that the district court erred in excluding the expert testimony of geotechnical engineer Joseph Waxse, which TPC attempted to enter under Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure. Further, TPC argues that the district court erred by relying on HBI's experts. We disagree.

Rule 26(a)(2)(C) addresses the disclosure of expert witnesses who were involved in the events leading up to litigation and may testify both as an expert and as a fact witness. The rule states:

> (C) **Witnesses Who Do Not Provide a Written Report**. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
>
> (i)     the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
>
> (ii)    a summary of the facts and opinions to which the witness is expected to testify.

FED. R. CIV. P. 26(a)(2)(C). Subsection (C) is to be contrasted with Rule 26(a)(2)(B), which accounts for experts who are retained specifically for

litigation. Rule 26(a)(2)(B) expert witnesses are required to file a written report. *See* FED. R. CIV. P. 26(a)(2)(B).

The district court found that Waxse did not fit the criteria for classification as a Rule 26(a)(2)(C) witness. Waxse works with Terracon Consultants, Inc. When Beck contracted with LaShip and TPC to complete LaShip's remediation work on the Project, Beck subcontracted with Terracon to complete Cone Penetrometer Testing ("CPT") to "measure soil strength and compressibility and to assess the soil type in areas where HBI had installed soil-mixed columns." To explain its reasoning, the court referred to emails between the plaintiffs and Waxse, as well as the content of Waxse's testimony—both of which supported the district court's conclusion that Waxse's opinion was prepared specifically for litigation and did not equate to the ground-level opinion of an expert who was involved in the events leading up to litigation. We apply an abuse of discretion standard and agree that the district court did not err in excluding Waxse's expert testimony because an expert report pursuant to Rule 26(a)(2)(B) was not filed.

With respect to TPC's claim that the district court improperly relied on the testimony of HBI's experts, we decline to disturb the district court's expert witness credibility determination. Moreover, because we hold that TPC's claims are prescribed, we need not analyze this issue further.

IV.

In sum, we have considered the arguments of each party with respect to the issues present in the instant case, and we AFFIRM the judgment of the district court on all the issues.